(626 P.2d 1211)

No. 51,709

In the Matter of the Estate of Georgina B. Zahradnik, Deceased. JUNIOR ZAHRADNIK, *Appellant,* v. GORDON L. ZAHRADNIK, *Appellee.*

Opinion filed April 24, 1981.

*Ron Svaty,* of Aylward, Svaty & Sherman, of Ellsworth, for appellant.

*Granville M. Bush,* of Bush & Bush, of Lyons, for appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

PRAGER, J.: The basic issue presented in this case is whether a certain joint and mutual will is also contractual. The parties to the action are Junior Zahradnik, appellant, and Gordon L. Zahradnik, appellee. They are brothers and the only children of the testators, Emil H. Zahradnik and his wife, Georgina B. Zahradnik. On November 28, 1973, Emil and Georgina executed a joint and mutual will which provided as follows:

"I, EMIL H. ZAHRADNIK, and I, GEORGINA B. ZARADNIK, husband and wife, of Ellsworth County, Kansas, each of us and both of us being of sound and disposing mind and memory and not under any restraint and realizing the uncertainty of life and the certainty of death, and wishing to direct how our property shall be distributed on our respective deaths, do hereby make, publish and declare this to be our last will and testament, and hereby revoke any and all former wills by us or either of us heretofore made.

"FIRST: It is the will and desire of each of us and of both of us that our just debts and funeral expenses be paid by our executor without first having them allowed by the probate court.

"SECOND: It is the mutual will and desire of each of us and the mutual will and desire of both of us that on the death of either of us all of the property, of every kind and nature whatsoever including both real and personal, of the first deceased party shall descend to and become the sole and separate property of the survivor to be his or hers absolutely.

"THIRD: Upon the death of the survivor we give and bequeath to each of our grandchildren then living the sum of Five Hundred Dollars ($500.00).

"FOURTH: All the rest, residue and remainder of our estates we hereby give,

devise and bequeath to our two sons, Junior Zahradnik and Gordon L. Zahradnik, in equal shares, provided that there shall be charged against the share of each of such children the amount due on notes given by them to us which have not been paid at the time of the death of the survivor.

"FIFTH: We hereby constitute and appoint the survivor as executor of this our last will and testament and direct that no bond be required of such survivor. On the death of the survivor we hereby constitute and appoint Junior Zahradnik and Gordon L. Zahradnik as executors of this our last will and testament and direct that no bond be required of them, or either of them in the event one shall be unable to serve for any reason.

"IN TESTIMONY WHEREOF, we have each subscribed our names in the presence of witnesses and declared the same to be our last will and testament, this 28th day of November, 1973.

"/s/ Emil H. Zahradnik

Testator

"/s/ Georgina B. Zahradnik

Testatrix"

Emil died on November 11, 1975, and his estate was probated in Ellsworth County. No controversy arose in the administration of his estate. Under the terms of the will and by virtue of being the surviving joint tenant of certain property, Georgina inherited all of the property. Thereafter, it appears that Georgina and her son, Junior Zahradnik, became estranged. Georgina proceeded to create a revocable *inter vivos* trust which provided, in substance, that upon her death the trust property should vest in her other son, Gordon, the appellee. The effect of the *inter vivos* trust was to defeat the provisions of the joint and mutual will executed in 1973 by enabling Gordon Zahradnik to inherit Georgina's property.

Georgina Zahradnik died on September 11, 1978, survived by Gordon and Junior. Junior Zahradnik filed a petition for the probate of the joint will as Georgina's will. Gordon Zahradnik petitioned for certification of the case to the district court from the district magistrate on statutory grounds. The case was so certified, and a hearing was held on the petition to admit the will to probate. Gordon Zahradnik's position was that he had no objection to the admission of the will to probate as Georgina's will, but that there was no property for the will to act upon, because the will was not contractual and Georgina Zahradnik had transferred during her lifetime all of her property to the *inter vivos* trust or to joint tenancies. The district court admitted the will to probate and

then summarily decided that it should determine as a matter of law whether or not the will was contractual. The district court directed the parties to file briefs on the issue. It did not afford either of the parties a hearing or an opportunity to present evidence on the intent of the testators. Memorandum briefs were filed. The appellant, Junior Zahradnik, contended that the joint and mutual will of his parents was contractual. Gordon Zahradnik contended that it was not. Thereafter, the trial court filed its memorandum decision holding that the will was joint and mutual, but not contractual. It appears that the trial court relied upon the second paragraph of the joint will, noting that, since Georgina, as the survivor, became the owner of all of the property *absolutely* at Emil's death, the will was not ambiguous and, further, that it was not contractual as a matter of law. Junior Zahradnik has appealed that determination to this court.

Before proceeding with a determination of the appeal on its merits, we must first consider a challenge to appellate jurisdiction. The appellee has filed motions for involuntary dismissal, claiming lack of appellate jurisdiction on two grounds: (1) Failure of appellant to file an appeal bond, and (2) failure of appellant to serve notice of appeal on all interested parties. Essentially, it is the position of the appellee that the court of appeals is without jurisdiction, because no appeal bond was furnished within 30 days from the date of the final judgment, relying on K.S.A. 1980 Supp. 59-2401(*b*) and 60-2103. The record shows that the journal entry and notice of appeal were both filed on December 5, 1979. On April 18, 1980, appellee filed a motion under Rule 5.05 (225 Kan. xl-xli) for involuntary dismissal for lack of appellate jurisdiction because appellant had failed to file an appeal bond. Appellant responded on April 21, 1980, denying the necessity of filing such a bond, and alternatively, requesting permission to file an appeal bond. Permission was granted and the appeal bond was filed on October 3, 1980.

In order to determine this issue, we must consider several statutes. K.S.A. 1980 Supp. 59-2401(*b*) and (*c*) provide as follows:

"(*b*) Notwithstanding the provisions of K.S.A. 60-2103, and any amendments thereto, relating to bonds, the appellant, other than the state or municipality or a fiduciary appealing on behalf of the estate, shall file in the court from which the appeal is taken a bond in such sum and with such sureties as may be fixed and approved by the court, conditioned that said appellant will without unnecessary delay prosecute the appeal and pay all sums, damages and costs that may be adjudged against said appellant.

"(c) Except as otherwise provided in this section, appeals taken pursuant to this section shall be taken in the manner provided by chapter 60 of the Kansas Statutes Annotated for other civil cases."

## K.S.A. 60-2103 provides in part as follows:

"(a) *When and how taken.* When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be thirty (30) days from the entry of the judgment, as provided by K.S.A. 60-258 . . . .

"A party may appeal from a judgment by filing with the clerk of the district court a notice of appeal. Failure of the appellant to take any of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in this chapter, or when no remedy is specified, for such action as the appellate court having jurisdiction over the appeal deems appropriate, which may include dismissal of the appeal. . . .

. . . .

"(d) *Supersedeas bond.* Whenever an appellant entitled thereto desires a stay on appeal, he or she may present to the district court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. The bond shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed, or if the judgment is affirmed, and to satisfy in full such modification of the judgment such costs, interest, and damages as the appellate court may adjudge and award. . . .

"(e) *Failure to file or insufficiency of bond.* If a supersedeas bond is not filed within the time specified, or if the bond filed is found insufficient, and if the action is not yet docketed with the appellate court, a bond may be filed at such time before the action is so docketed as may be fixed by the district court. After the action is so docketed, application for leave to file a bond may be made only in the appellate court."

## K.S.A. 1980 Supp. 60-2103a provides as follows:

"**Appeals from district magistrate judges.** (a) In actions commenced in the district courts of this state all appeals from orders or final decisions of a district magistrate judge shall be heard by a district judge or associate district judge. Except as otherwise provided by law, such appeals shall be taken by notice of appeal specifying the order or decision complained of and shall be filed with the clerk of the district court within ten (10) days after the entry of such order or decision. The notice of appeal shall specify the party or parties taking the appeal; shall designate the order or decision appealed from; and shall state that such appeal is being taken from an order or decision of a district magistrate judge. The appealing party shall cause notice of the appeal to be served upon all of the parties to the action in accordance with the provisions of K.S.A. 60-205. *Upon filing the notice of appeal, the appeal shall be deemed perfected.*

"(b) Except as otherwise provided by law or rule of the supreme court, the provisions of subsections (b) to (i) of K.S.A. 60-2103, and any amendments

thereto, shall be applicable to appeals from orders and decisions of district magistrate judges." (Emphasis supplied.)

K.S.A. 1980 Supp. 59-2401(*b*) requires that when an appeal is taken in a probate matter under chapter 59, the appellant is required to file an appeal bond to be fixed and approved by the court. *In re Estate of Kempkes,* 4 Kan. App. 2d 154, 159, 603 P.2d 642 (1979). Prior to court unification, chapter 60 appellate procedures were not applicable to probate appeals under 59-2401. *In re Estate of Parker,* 201 Kan. 1, 4-5, 439 P.2d 138 (1968). In 1977, 59-2401 was amended to provide that probate appeals under 59-2401 were also to be governed by chapter 60. After unification, the rules of appellate procedure set forth in 60-2103 became applicable to appeals in probate proceedings appealed under K.S.A. 1980 Supp. 59-2401(*a*). See *In re Estate of Burns,* 227 Kan. 573, 575, 608 P.2d 942 (1980). In 1977, K.S.A. (now 1980 Supp.) 60-2103a was enacted to govern appeals from district magistrate judges to a district judge or associate district judge, which would include probate appeals under chapter 59. That statute provides that such appeals shall be taken by notice of appeal filed with the clerk of the district court within ten days after the entry of the order or decision complained of. 60-2103a then states unequivocally that, upon filing the notice of appeal, the appeal shall be deemed perfected. There is nothing in that statute which declares that the appeal bond, required by 59-2401(*b*), must be filed within the ten-day period in order for the appeal to be perfected. Stated in another way, when we read the three statutes set forth above together, it is clear to us that, although the filing of an appeal bond is required by K.S.A. 1980 Supp. 59-2401(*b*) in an appeal of a probate matter, the filing of such a bond is not jurisdictional and it may be filed after the appeal has been taken on order of the court.

In *In re Lakeview Gardens,* 227 Kan. 161, 167, 605 P.2d 576 (1980), the Supreme Court held that, under Kansas appellate practice, although timely filing of notice of appeal is jurisdictional, failure to strictly comply with other prerequisites for appeal is not jurisdictional where no prejudice results. In the case now before us, prejudice because of the late filing of the appeal bond is neither alleged nor apparent, and therefore is not sufficient to defeat appellate jurisdiction. There is a marked similarity of purpose between the probate appeal bond required by 59-

2401(*b*) and the supersedeas bond required by K.S.A. 60-2103(*d*). The bond required under chapter 59 is to assure that "appellant will without unnecessary delay prosecute the appeal and pay all sums, damages and costs that may be adjudged against said appellant." Similarly, the purpose of the supersedeas bond under 60-2103(*d*) is to assure satisfaction of the judgment together with costs, interest, and damages for delay. Under 60-2103(*e*), a supersedeas bond which is not timely filed may nonetheless be filed upon leave of the appellate court. The late filing of an appeal bond may also be allowed by the appellate court as in the present case. A dismissal of an appeal under Rule No. 5.05 (225 Kan. xl-xli) is within the appellate court's discretion. *Carson v. Eberth,* 3 Kan. App. 2d 183, 185, 592 P.2d 113 (1979). Denial of an appeal on technical procedural grounds is not favored, and it should not serve as the basis for dismissing the appeal if the interests of justice dictate otherwise. *Kansas Bankers Surety Co. v. Scott,* 225 Kan. 200, 202, 589 P.2d 575 (1979). Under all the circumstances in this case, we hold that the late filing of the appeal bond by the appellant did not deprive this court of appellate jurisdiction and should not result in the mandatory dismissal of the appeal.

The appellee also challenges the jurisdiction of this court by an additional motion to dismiss the appeal alleging that the appellant failed to serve notice of the appeal on all interested parties. Appellee maintains that, because appellant seeks to enforce the terms of the will, the joint owners of certificates of deposit purchased by Georgina before her death should have been served with a copy of the notice of appeal. Under the circumstances of this case, the joint owners of the certificate of deposit were not entitled to notice of the appeal. They were not parties in the case at the time the judgment was rendered. Furthermore, their property interests will not be affected by the outcome of this appeal because both parties have stipulated and agreed to the distribution of the certificates of deposit to the surviving joint owners. The only property to be affected by this appeal is the trust property, title to which is disputed only by appellant and the appellee, who was given proper notice of the appeal. Thus, we find the contention of appellee that lack of notice to others defeats appellate jurisdiction is without merit.

We turn now to the issue raised on the appeal—whether the joint and mutual will executed by Emil and Georgina Zahradnik

was contractual in nature so as to preclude the devolution of Georgina Zahradnik's property to her son Gordon by the creation of the *inter vivos* trust. The basic issue presented in this case has arisen many times down through the years. Justice Fontron, speaking for the Supreme Court in *In re Estate of Chronister,* 203 Kan. 366, 454 P.2d 438 (1969), succinctly summarized the following rules applied in prior decisions where wills were claimed to be contractual:

"(1) Whether a will is contractual, be it a joint will or one of separate wills, is a question of fact which must be established by proof.

"(2) The mere fact that a will is joint does not in and of itself establish it to be the result of a pre-existing agreement.

"(3) A joint and mutual will and the terms and provisions thereof, may be considered sufficient as circumstantial evidence to establish that it was executed pursuant to an agreement.

"(4) Where a joint will shows *on its face* by the terms and provisions thereof that it is contractual in character, extrinsic evidence is not admissible for the purpose of proving otherwise.

"(5) Where there is ambiguity from the language used in a joint will as to whether or not it is based on a contract, extrinsic evidence is admissible to establish either the existence or nonexistence of a contract." (p. 372.)

These basic principles were recognized and followed in *In re Estate of Thompson,* 206 Kan. 288, 478 P.2d 174 (1970); *Reznik v. McKee, Trustee,* 216 Kan. 659, 673, 534 P.2d 243 (1975).

We must first consider whether or not the joint and mutual will involved here is ambiguous. In *In re Estate of Chronister,* 203 Kan. at 374, and later in *Theimer v. Crawford,* 224 Kan. 586, 589, 582 P.2d 1151 (1978), the rule for determining whether a will is ambiguous is stated as follows: The critical test in determining whether a will is ambiguous is whether the intention of the testator or testatrix can be determined from the four corners of the instrument itself. If the testamentary intention can be gleaned from the face of the will, ambiguity does not exist; otherwise it does. Here the district court found the will not to be ambiguous and then held, as a matter of law, that the will was not contractual. The effect of this ruling was to preclude any of the parties, particularly the appellant, from introducing testimony of the scrivener of the will and of other witnesses to establish whether or not there was a preexisting contract between Emil and Georgina Zahradnik that the property of the parties would ultimately pass to their two sons in accordance with the provisions of the joint will.

The joint and mutual will of Emil and Georgina Zahradnik contains no clearly expressed intent of the parties to be bound thereby. There is no presumption that a joint and mutual will is contractual in the absence of evidence to support a finding that the testators intended to contract and be bound thereby. *In re Estate of Wade,* 202 Kan. 380, 389, 449 P.2d 488 (1969). The intent of the testators to contract to be bound by a joint and mutual will need not be expressly recited, but may be determined circumstantially by other expressions used in the will. The Supreme Court has held that language indicating the testators' joint intent to be contractually bound by a joint and mutual will include the following:

(1) A provision in the will for a distribution of property on the death of the survivor;

(2) a carefully drawn provision for the disposition of any share in case of a lapsed residuary bequest;

(3) the use of plural pronouns;

(4) joinder and consent language;

(5) the identical distribution of property upon the death of the survivor;

(6) joint revocation of former wills; and

(7) consideration, such as mutual promises.

*Reznik v. McKee, Trustee,* 216 Kan. at 674-78; *In re Estate of Thompson,* 206 Kan. at 291; *In re Estate of Chronister,* 203 Kan. at 369-71; *In re Estate of Wade,* 202 Kan. at 390.

The will now before us contains no clear expression of the parties' intent to be bound. Nor is there joinder or consent language. The other factors demonstrating the intent to be bound are present, however. There is a provision for the distribution of property and the appointment of executor on the death of the survivor. There is a joint revocation of prior wills. There is identical distribution of property and the use of plural pronouns throughout the document. The only provision to the contrary is the language in paragraph two, that upon the death of one, "all of the property, of every kind and nature whatsoever including both real and personal . . . shall descend to . . . the survivor to be his or hers *absolutely.*" (Emphasis supplied.)

In *In re Estate of Chronister,* 203 Kan. 366, the Supreme Court upheld a trial court finding that a will which contained plural pronouns and provisions for the disposition of property on the

death of the survivor, was contractual despite the devise of property to the survivor "forever." Other Kansas cases have been more definitive, and have held wills to be contractual despite language purporting to convey to the survivor the fee or absolute title to real and personal property. In *In re Estate of Tompkins,* 195 Kan. 467, 407 P.2d 545 (1965), the will provided that all property, whether jointly or separately held by either of the testators, was devised and bequeathed to the survivor "with right of disposal." It was held that the will was contractual despite the language used. Likewise, *In re Estate of Jones,* 189 Kan. 34, 366 P.2d 792 (1961), held that the joint and mutual will was contractual in nature despite a provision in the will that the property was to pass to the survivor *"absolutely and without reservations"* and, at the death of the survivor, all property thus possessed to be divided equally between the three children of the testator.

In *Tompkins,* it was held that extrinsic evidence was admissible to establish that the will was either contractual or noncontractual. There the testimony of the scrivener concerning his conversations with the testators was admitted. In *Jones,* the will was held to be contractual on the basis of the written instrument alone, since neither of the parties offered evidence on the issue. Having considered the cases cited above, we have concluded that the language used in the joint and mutual will before us in this case is ambiguous and that the parties were entitled to present evidence to establish the existence or nonexistence of a preexisting contract. We hold the district court erred in holding, as a matter of law, that the will was not contractual without affording to the appellant an opportunity to present evidence on that issue. The case, therefore, must be reversed and remanded to the district court with instructions to hold a hearing and to permit the parties to present relevant evidence on the factual issue of whether the Zahradniks' joint will was based upon a preexisting contract. Having received that evidence, the court will then be in a position to determine the factual issue on the basis of the language used in the will plus any evidence which is presented by the parties.

The appellee presents two new issues which were not raised or determined in the trial court. These issues are not properly before the court on this appeal and will not be determined.

For the reasons set forth above, the judgment of the district court is reversed. The case is remanded for an evidentiary hearing

and determination of the factual issue whether the will involved in this case is contractual or noncontractual.