(638 P.2d 992)
No. 52,666

In the Matter of the Estate of Edna E. Duncan, Deceased
Petition for review denied March 3, 1982.

Opinion filed January 14, 1982.

*Richard L. Friedeman, Glenn Opie* and *Fred L. Conner,* of Conner, Opie & Friedeman, of Great Bend, and *Harold H. Halstead,* of Mercer Island, Washington, for appellant Shirley Duncan, individually and as Executor of the Will of Maurice W. Duncan, deceased.

*Robert L. Bates* and *Kent Roth,* of Hagen, Bates & Suelter, of Great Bend, for appellants Janet Lynn Duncan, Kevin Thane Duncan, Willow Le Duncan and Kyle J. Duncan.

*Boyce P. Hardman,* of Diets, Hardman, Watkins & Calcara, of Great Bend, for appellee The First National Bank and Trust Company in Great Bend, as Executor of the Will of Edna E. Duncan, deceased.

*Don C. Foss,* of Great Bend, for appellee, Maurice W. Duncan, Jr.

Before JUSTICE HOLMES, presiding, MEYER, J. and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: This appeal involves a joint and mutual contractual will executed by George A. Duncan and Edna E. Duncan, husband and wife.

The will was executed on February 8, 1939. There is nothing remarkable about the will itself. George and Edna respectively owned property of substantial value. They made an agreement between themselves, as reflected in the will, that their properties should go first to the survivor of them for life with a power of disposition, and then, after the death of the survivor, to their grandson, Maurice W. Duncan, (herein referred to as Maurice). After the execution of the will, however, an unusual course of events transpired to give rise to this litigation.

On April 7, 1946, George died, and the 1939 will was admitted to probate in Barton County. The final decree in those proceedings was entered on October 27, 1947.

On May 15, 1956, the only natural child of Maurice was born and was named Maurice W. Duncan, Jr., (referred to herein as Maurice, Jr.).

Sometime thereafter, Maurice divorced his wife and married Shirley Herndon, now Mrs. Shirley Duncan (referred to herein as Shirley), and in 1972, Maurice adopted the four children of his second wife, Shirley. These four children are Janet Lynn, Kevin Thane, Willow Le, and Kyle J., (referred to herein as the joint claimants).

Maurice, the grandson, executed his last will on October 27, 1973, and on January 30, 1978, he was killed in a traffic accident.

On March 30, 1978, exactly two months after the death of her grandson, Edna Duncan, at the age of 97, revoked her 1939 will and executed a new will which, by its terms, left everything to her great-grandson, Maurice, Jr.

Maurice's will was admitted to probate in the Superior Court of King County, Washington, on November 3, 1978, and Shirley Duncan was appointed and qualified as the executrix. She has filed her claim herein, individually and as executrix.

Edna Duncan died on February 20, 1979. The First National Bank and Trust Company in Great Bend, Kansas, on February 28, 1979, petitioned to have the March 30, 1978, will, Edna's second will, admitted to probate. Although Shirley filed objections to the admission of this will, the probate court on April 17, 1979, found that the 1939 will of Edna was not her last will and testament and admitted the second will to probate. The First National Bank and Trust Company (hereinafter referred to as the Bank) was appointed as executor.

Thereafter, Shirley sought relief in several ways, including (1) a motion for summary judgment on her petition for allowance of demand, (2) a petition to strike from inventory and to determine ownership of property, and (3) her answer and written defenses to the Bank's petition for the sale of real estate, all of which were unsuccessful.

On March 26, 1979, the probate court granted an oral motion for the attorney for Maurice, Jr., to enter his appearance in the case, and on August 3, 1979, the four adopted children of Maurice filed their petition for allowance of claim as the joint claimants herein.

The probate court, on October 10, 1980, entered an order directing the sale of real estate at private sale, and on October 23, 1980, Shirley Duncan filed her notice of appeal from the various orders. The joint claimants filed notice of appeal the following day.

Neither Shirley nor the joint claimants filed an appeal bond within 30 days as provided by K.S.A. 1980 Supp. 59-2401. Thereupon, the Bank and Maurice, Jr. mailed to the Clerk of the Appellate Courts, for filing, a motion to dismiss the appeal for lack of jurisdiction. Upon receipt of a copy of this motion, Shirley and the joint claimants, without notice to the Bank and Maurice, Jr., applied to the probate court for an appeal bond and obtained an order to file an appeal bond in the amount of $5,000.00. This bond was filed with the probate court on December 29, 1980.

On January 15, 1981, this court denied the appellee's motion to dismiss and granted leave to renew and argue the motion at the hearing on the merits of the appellant's claims. The Supreme Court denied review of this ruling.

To begin with, then, we are faced with the pending motions to dismiss for lack of jurisdiction. The Bank and Maurice, Jr., have challenged the court's jurisdiction on the grounds that when an appeal bond is required by statute in order to perfect an appeal, failure to file such a bond results in complete absence of appellate jurisdiction. They rely particularly on *In re Estate of Torrence,* 204 Kan. 443, 464 P.2d 193 (1970); *Polzin v. National Cooperative Refinery Ass'n,* 179 Kan. 670, 298 P.2d 333 (1956); and *St. L.K. & S.W. Rly. Co. v. Morse,* 50 Kan. 99, 31 Pac. 676 (1892).

More recent cases, however, are to the contrary. In *In re Estate of Zahradnik,* 6 Kan. App. 2d 84, 626 P.2d 1211 (1981), this court

held that under present Kansas statutes, mere out-of-time filing of an appeal bond does not defeat appellate jurisdiction where notice of appeal is timely filed.

The Supreme Court, in *In re Lakeview Gardens, Inc.,* 227 Kan. 161, 605 P.2d 576 (1980), held that under Kansas appellate practice, although timely filing of notice of appeal is jurisdictional, failure to strictly comply with other requirements for appeal is not jurisdictional where no prejudice results. The denial of an appeal on technical procedural grounds is not favored and should not serve as the basis for dismissing an appeal if the interests of justice dictate otherwise. *Kansas Bankers Surety Co. v. Scott,* 225 Kan. 200, 202, 589 P.2d 575 (1979). The appellee's motions to dismiss are therefore denied.

There can be little doubt that the 1939 will of George and Edna is a joint and contractual will. See *In re Estate of Chronister,* 203 Kan. 366, 454 P.2d 438 (1969). The parties concede this. Although the will contained a provision that it could not be changed or revoked without the written consent of each other, Edna revoked the will and made a second will. At issue herein is whether Edna violated the terms of the 1939 will in so doing. Notwithstanding this issue, under the law of this state it is the second will that is the appropriate one for probate, even though it may be ineffective to transfer property insofar as it violates the original contract. *In re Estate of Adkins,* 161 Kan. 239, 167 P.2d 618 (1946); *Frontier Lodge v. Wilson,* 139 Kan. 75, 30 P.2d 307 (1934).

The general rule is that a joint will is, in effect, the separate will of each testator and speaks as to his or her property from the time of his or her death. It affects only the deceased's own property or his share in jointly owned property. 79 Am. Jur. 2d, Wills § 814, p. 867. See also *Seal v. Seal,* 212 Kan. 55, 510 P.2d 167 (1973), and *In re Estate of Zimmerman,* 207 Kan. 354, 485 P.2d 215 (1971). Thus George's will, when admitted to probate, spoke only as to his property.

The claims made by the respective appellants are each predicated upon paragraph "Second" of the joint will which provides as follows:

"It is the Will and desire of each of us, and each of us hereby gives, bequeaths and devises to the survivor of us, all the property, real, personal, or mixed, of which either of us shall die possessed, *for and during the natural life of the survivor,* to be by the survivor of us taken and held for his or her own use or disposal as he or she may deem right and proper, with full power to sell, dispose of, lease, mortgage

and use the same; *and after the death of the survivor of us,* subject to the payment of debts and the several bequests hereinafter designated, *we hereby give, devise and bequeath all of our property, real, personal, or mixed, to our grandson Maurice W. Duncan, in fee, forever."* (Emphasis supplied.)

Shirley Duncan claims that the above language created a vested remainder in her husband Maurice in George Duncan's property and a contractual right to Edna's property. The Bank and Maurice, Jr. contend that any remainder was not to vest in Maurice until the death of the survivor, that since Maurice predeceased his grandmother, the survivor, the devise lapsed, and that the applicable anti-lapse statute of Kansas, now K.S.A. 59-615, in effect at the time of George's death included only lineal issue and not a wife or adopted children. They argue, therefore, Edna was legally entitled to make a new will leaving all property to Maurice, Jr., in order to carry out the intent of George and Edna, that their property should go only to their lineal descendants. The joint claimants take still another position that the applicable anti-lapse statute in effect at the time of Edna's death, which includes adopted children, should control and that the joint claimants and Maurice, Jr. are therefore entitled to each receive one-fifth of the estate.

There are innumerable cases defining and construing remainder interests. Clearly the law favors vested remainders, *Mathews, Administrator v. Savage,* 195 Kan. 501, 407 P.2d 559 (1965), where it is consistent with the intention of the testator as gleaned from the language in the will. *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146 (1922), cited with approval in *McVey v. Pfingston,* 3 Kan. App. 2d 276, 593 P.2d 1014, *rev. denied* 226 Kan. 792 (1979).

Viewing the will as a whole, we believe that it was the clearly expressed intention of George and Edna, at the time the will was executed, that the survivor was to take a life estate in the property of the other, with power of disposition, and that the remainder was to vest in Maurice, the grandson. Only the enjoyment of possession was postponed until the death of the survivor, *Lowdermilk v. Lowdermilk,* 183 Kan. 174, 326 P.2d 248 (1958); *Faris v. Nickel,* 152 Kan. 652, 107 P.2d 721 (1940); *Buxton v. Noble,* 146 Kan. 671, 73 P.2d 43 (1937). We hold, therefore, that upon the death of George and the admission of his will to probate, a remainder interest in George's property vested in Maurice, subject to the life estate in Edna.

Separate and distinct from the matter of George's property and the estates created under his will is the matter of the property which Edna owned separately in her own right at the time of George's death and the effect of the 1939 will upon such property.

Under the 1939 will, there existed a binding and enforceable contract upon Edna to distribute her estate, upon her death, to Maurice, her grandson. It could not be revoked or changed without the consent of each other. *In re Estate of Thompson,* 206 Kan. 288, 478 P.2d 174 (1970). Although the will gave Edna the right of disposal, this right did not include the right to give the property away or to dispose of it without consideration, *In re Estate of Buckner,* 186 Kan. 176, 348 P.2d 818 (1960), and this contractual limitation extended to all property in her hands regardless of whether it came to her under George's will or was in her own name at the time of George's death. *Seal v. Seal,* 212 Kan. 55, Syl. ¶ 1.

The issue before us then, is whether the untimely death of Maurice prior to his grandmother's death caused the devise in Edna's 1939 will to lapse and justified her in making a new will. We think not.

Maurice was a third-party beneficiary under the 1939 will. As such, he was given a claim against Edna's estate for the property not disposed of by the contractual will or in accordance with Edna's power to dispose under the will. He was vested with a recognized interest in such property by virtue of the will and could have maintained proceedings to prevent waste and protect his interest, *Seal v. Seal,* 212 Kan. 55, or to enforce the contract and impress a trust on the property, *In re Estate of Dull,* 184 Kan. 233, 336 P.2d 435 (1959), *Braden v. Neal,* 132 Kan. 387, 295 Pac. 678 (1931), or he could have filed a claim against the estate of Edna had she breached the will and died first. *Salvation Army v. Estate of Pryor,* 1 Kan. App. 2d 592, 570 P.2d 1380 (1977).

This contractual claim vested when Edna elected to take the benefits of the contractual will upon the death of her husband, *Warwick v. Zimmerman,* 126 Kan. 619, 270 Pac. 612 (1928), and it arose out of the promises of Edna and George to each other, to leave their property to Maurice upon the death of the survivor, and not out of the present operation of the joint will. While there appear to be no reported cases on this point, there is dictum by the Supreme Court which implies that the death of a beneficiary

under a contractual will does not cause a lapse of the devise. In *In re Estate of Pennington,* 158 Kan. 495, 148 P.2d 516 (1944), the court ruled that a sole beneficiary under mutual (but not contractual) wills could, *in the absence of a contract to the contrary,* revoke the will and defeat the decedent's interests.

We conclude that Maurice's contractual rights under the 1939 will were not extinguished by his untimely death, and that the benefits were subject to distribution by him under his will.

The last claim of error arises out of the contention of Shirley that the Bank and Maurice, Jr., are engaged in an impermissible collateral attack on the final decree in the George Duncan Estate. The final decree generally, and in the language of the will, assigned a life estate in George's property to Edna and provided that after her death the residue and remainder of said property "is hereby assigned and distributed to said Maurice W. Duncan, in fee simple forever."

It is the contention that this language in the decree clearly granted a vested remainder to Maurice in George's property and that the Bank's claim that the will gave Maurice only a remainder contingent upon him surviving his grandmother constitutes a collateral attack on the final decree.

A final decree that assigns property in the general terms of the will does not comply with the intent of the statute, now K.S.A. 59-2249, where it leaves in doubt the precise nature and extent of the interest or title thus assigned. *Sharpe v. Sharpe,* 164 Kan. 484, 190 P.2d 344 (1948). In view of the substantial issues raised herein as to the nature and extent of the interests acquired by Maurice under or by virtue of the will, whether vested, contingent, or contractual, this action can only be considered as one to construe and determine the interests thus acquired by Maurice, and not as an attack on the validity of the final decree.

Questions have also been raised as to attorney fees and the order of the court authorizing the sale of certain property. These issues necessarily depend upon a determination of what part of the inventory should be classified as vested remainders acquired by Maurice under his grandfather's will and what part as Edna Duncan property subject to the 1946 covenant that the same should pass to Maurice upon her death.

Reversed and remanded for redetermination consistent with the foregoing opinion.