No. 65,194

In the Matter of the Estate of MACY VIRGIL BEASON, Deceased, and In the Matter of the Estate of CAROLINE HEARTING BEASON, Deceased. LYMAN JOHN BENSON, STEVE BEASON, CARROLL WADE BEASON, HELEN BEASON BRYANT, MURIEL BEASON COOK, NIXIE BEASON KOELLING, DORIS BEASON, and DAVID J. HARDING, as Guardian ad litem, *Appellants*. ALBERT NORTH and EUNICE NORTH, Co-Executors, and ALBERT NORTH, EUNICE NORTH, ARLIYN NORTH, and DARYL NORTH, Individually, *Appellees*.

(811 P.2d 848)

Opinion filed May 24, 1991.

*Phillip A. Burdick*, of Gernon, Collins & Burdick, of Hiawatha, argued the cause and was on the brief for appellant Lyman John Benson, and *David J. Harding*, of WaKeeney, argued the cause and was with him on the brief as guardian ad litem for the named Beason heirs.

*Gary M. Howland*, of Deines & Deines, of WaKeeney, argued the cause and was on the brief for co-executors/appellees, and *Don C. Staab*, of Hays, was with him on the brief for appellees Norths, individually.

The opinion of the court was delivered by

ABBOTT, J.: This appeal arises from proceedings involving the estates of Macy Virgil Beason and Caroline Hearting Beason which were consolidated with a quiet title action. The trial court quieted title to the disputed land in favor of Albert and Eunice North, set aside a deed, and determined that a codicil to Caroline Hearting Beason's will would not be admitted to probate.

In order to understand the issues, it is necessary to give background information and the procedural history of what has occurred in the case. Readers are informed that this dispute is over four sections of land in Trego County owned by Macy and Caroline Beason, which will be referred to in this opinion as Hearting-Beason II (HB II). The dispute is between the North family (who managed the Beasons' farming operation) and nieces and nephews of the Beasons. The original farm and ranch, Hearting-Beason I (HB I), and other assets devised to the Kansas State University Foundation are not in dispute.

Macy Beason and Caroline Hearting Beason were husband and wife. They had no children. They lived in Trego County and, starting with a section inherited from Caroline's parents, they developed a large farm and ranch operation along with other assets. During the last 25 to 30 years of their lives, they had no close family relationships. Since 1981, the ranching on HB I had been done by the North family. The Beasons were pleased with the way that the Norths farmed the land. In July 1987, the Beasons purchased four additional sections of land (HB II) for the purpose of eventually giving it to Albert and Eunice North.

After several revisions, Macy and Caroline executed a will on August 15, 1987, entitled "Joint and Mutual Will," giving HB II

to the Norths and giving HB I and all other property to The Kansas State University Foundation, with a life estate reserved for the survivor.

Within half an hour of executing the will, Macy executed a deed to HB II, giving it to himself and Caroline as joint tenants with right of survivorship and not as tenants in common. This deed was not introduced into evidence at any of the proceedings, although it was testified to by one of the drafters of the will and deed. Macy had purchased HB II at public auction and Caroline's name had not been placed on the deed at that time.

A codicil to the will was executed on February 25, 1988, which provided that in the event the Norths predeceased the Beasons, HB II would go to the Norths' sons, Arliyn and Daryl.

Macy Virgil Beason died on August 28, 1988, and shortly thereafter his estate proceedings were opened. At this point, Caroline was 91 and in a hospital in Ransom. Steve Beason and C. Wade Beason (nephews of Macy) removed Caroline from the hospital in Ransom and took her to a hospital in Hays, and then to a series of other hospitals, ending in Kansas City, Missouri. While in Hays, Caroline filed for a voluntary conservatorship, attempting to have Muriel Faith Cook (one of Macy's nieces) appointed as conservator.

Three of Macy's nephews and nieces (Steve Beason, Nixie Koelling, and Muriel Faith Cook) filed an objection to the appointment of the Norths as executors of Macy's estate. At the hearing on the admission of the will to probate on October 7, 1988, these three appeared personally and through an attorney. (Another nephew appeared personally.) The court admitted the will and codicil to probate and made a minor correction to a land description.

The next day, October 8, 1988, Caroline executed a deed for all four sections of HB II to "all nieces and nephews of Mace V. Beason who survive him & all nieces and nephews who survive grantor at the time of her death in equal, undivided shares (per capita)," and granted herself a life estate. Several days later, Caroline executed a power of attorney in favor of C. Wade Beason and Steve Beason. The deed was not recorded until January 10, 1989.

Shortly after this, in an order with the same case number as Macy's probate case, the court executed a restraining order against Macy's nieces and nephews prohibiting them from exercising custody or control over Caroline and directing that she be returned to the hospital in Ransom. After several days of legal maneuvers, a guardian ad litem was appointed for Caroline and an order was issued directing the return of Caroline to the Ransom Hospital.

Also at this point, Caroline executed a codicil to her will naming various nieces and nephews as executors and changing paragraph 3, which originally gave four sections of HB II to the Norths, to leave it to all her nieces and nephews who survived her and to the nieces and nephews of Macy who survived him.

Macy's will was admitted to probate on November 1, 1988. No appeal was taken.

The co-executors of Macy's estate then moved to dismiss from Macy's estate all of Macy's various nieces and nephews who were represented (we cannot tell from the record who they all are), arguing that they were not heirs, devisees, or legatees under K.S.A. 59-2224. At a hearing on the motion, an attorney, Randall Weller, informed the court that he was representing all of Macy's nieces and nephews. Weller admitted that the nieces and nephews were not heirs, legatees, or devisees, and argued they had standing only because there was a question whether the wills were contractual as well as joint and mutual, and that if Caroline were to die, then rulings in Macy's case would be relevant.

The trial court dismissed all of Macy's nephews and nieces on July 20, 1989, finding that they were not heirs, devisees, or legatees and had no standing. No appeal was taken. (See K.S.A. 1990 Supp. 59-2401[15]), which permits appeals from determinations that a person is or is not an heir, devisee, or legatee, although normally this determination would be made as a part of a K.S.A. 1990 Supp. 59-2249 final decree.)

At the hearing on construction of the will, Caroline was represented by her guardian ad litem. The court found the wills (and codicil of February 25) were contractual in nature, giving the survivor only a life estate in the property passing under the will. The court held that the Beasons did execute a deed on HB II at the same time as they executed the will, but that they did

not intend to alter the will. The court also noted that the February 25, 1988, codicil had the effect of republishing the will and "has the legal effect of severing the joint tenancy and terminating the survivorship," citing *In re Estate of Rooney*, 181 Kan. 1029, 317 P.2d 416 (1957), and *Berry v. Berry*, 168 Kan. 253, 212 P.2d 283 (1949).

The trial court's ruling was signed by the court on September 18, 1989, and filed September 19, 1989. On September 20, 1989, Caroline died, and her estate was soon opened.

A quiet title suit was filed by the Norths personally and as executors of the estate. The petition was filed under the caption of both Beasons' estates and given the same case numbers. (The trial court granted a motion to consolidate the estate cases for the purposes of the quiet title action.) The petition lists all 34 of Macy's nephews and nieces as parties to be served. The Norths alleged that by virtue of a certain deed (the deed executed by Caroline giving HB II to Macy's and her nieces and nephews), the defendants claimed an interest in the property. The Norths alleged that the trial court's decision in Macy's estate was res judicata and that when Caroline executed the deed she was incompetent and under undue influence of the defendants.

Six nieces and nephews answered the quiet title suit. We believe five of them were parties to the July 20, 1989, hearing where the trial court determined they were not heirs, devisees, or legatees of Macy and struck their pleadings and barred them from further participation in the lawsuit.

The pleadings are inconsistent in the use of names. But, we believe Steve Beason (who appears to be sometimes referred to as Steve Cass Beason), Nixie Koelling (sometimes referred to as Nixie Marie Beason Koelling), Muriel Faith Cook (sometimes referred to as Muriel *Faythe* Beason Cook and Muriel Cook), C. Wade Beason (sometimes referred to as Carroll Lee [Wade] Beason or Wade Beason have all made appearances in Macy's estate. Virginia Hunt (sometimes referred to as Doris Virginia Beason Hunt and Doris Hunt) is listed on a motion for a continuance concerning the motion to bar the nieces and nephews, but her name does not appear on the journal entry showing appearances. Helen Url (Patsy) Beason Bryant's name (sometimes referred to as Helen Bryant) appears for the first time in the answer to the

quiet title action. All prior pleadings list some version of the first four names listed in this paragraph, and pleadings refer to "the nieces and nephews" of the Beasons and the trial court's journal entries list the specific names as set forth above and refer to "other unspecified nieces and nephews." There are frequent references in the record inferring that "the nieces and nephews of the above-named decedents" are represented.

There are 42 defendants named in the quiet title action, 34 of whom are allegedly nieces and nephews of Macy Beason. In the Journal Entry of Judgment Quieting Title, cancelling the deed from Caroline Hearting Beason to all the nieces and nephews and holding the codicil to her will "ineffectual," the judgment was against all of the nieces and nephews. The trial court held that the issue of whether the wills of the Beasons are joint, mutual, and contractual "has been decided, that no appeal has been taken, and that the issue is res judicata. The parties here contesting the will were present at the hearings, were represented by counsel, and no appeal was taken from the Orders entered." In quieting title in favor of the North family (Albert, Eunice, Daryl and Arliyn—although the latter two do not appear to be devisees under the Beasons' will unless their parents predeceased the Beasons), the trial court also held that the deed and codicil to Caroline Hearting Beason's will was obtained by undue influence and persuasion and that Caroline Hearting Beason was incapable of making a valid warranty deed or will when the instruments were executed. The trial court previously based its decision to quiet title, cancel the deed, and hold the codicil ineffectual on the fact that the nieces and nephews had appeared in Macy's probate proceeding and did not appeal the trial court's decision not to allow them to participate. The trial court reasoned they were, therefore, bound by the trial court's later decision that the wills were joint, mutual, and contractual, and anything Caroline Hearting Beason did inconsistent with Macy's will was ineffectual.

From the record before us, it does not appear the codicil was properly before the trial court and the trial court appears to have ruled on the codicil without a hearing concerning it. That issue is not, however, raised. Appellees do state in their brief that the

codicil to Caroline Hearting Beason's will has never been heard by the trial court and is not an issue on appeal.

Lyman John Benson contends he was never served in the quiet title action, either personally or by publication service. He did make a special appearance to challenge the trial court's jurisdiction over him. The record gives no indication that his motion was considered by the trial court.

On appeal, the guardian ad litem and Lyman John Benson contend the 7 appellants named in the caption were not personally served with notice concerning Caroline Hearting Beason's estate and that service was not accomplished on 16 of the nieces and nephews in the quiet title action and no attempt at service by publication was attempted on 5 of the nieces and nephews.

On appeal, the appellants challenge whether the trial court had personal and subject matter jurisdiction to probate the will of Caroline Hearting Beason because not all the heirs were notified of the hearing on the petition to probate. What the appellants are really arguing (despite the title they put on this issue) is that there can be no final determination as to who the heirs and devisees are until that determination is made in the probate of an estate. Appellants also contend that they were denied due process of law, that res judicata is not applicable, and that they are entitled to an opportunity to appear and be heard on the issue of whether the wills are joint, mutual, and contractual.

As a preliminary matter, the appellees challenge this court's jurisdiction for failure of the appellants to file an appeal bond pursuant to K.S.A. 1990 Supp. 59-2401(b). The trial court determined this appeal to be a chapter 59 case governed by 59-2401(b) and set an appeal bond of $31,000. The appellants have not filed an appeal bond as of the date of this opinion.

There is a difference in the language of the statutes concerning bonds in appeals from chapter 59 and chapter 60 actions. K.S.A. 1990 Supp. 60-2103(d) provides: "Whenever an appellant entitled thereto desires a stay on appeal, such appellant may present to the district court for its approval a supersedeas bond." An appeal bond under chapter 60 then is only filed if the appellant desires a stay.

Chapter 59 is different. K.S.A. 1990 Supp. 59-2401(b) provides:

"Notwithstanding the provisions of K.S.A. 60-2103 . . . the appellant, other than . . . a fiduciary appealing on behalf of the estate, shall file in the court from which the appeal is taken a bond in such sum and with such sureties as may be fixed and approved by the court, conditioned that the appellant will without unnecessary delay prosecute the appeal and pay all sums, damages and costs that may be adjudged against the appellant."

In *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, Syl. ¶ 1, 626 P.2d 1211 (1981), the court said: "Although the filing of an appeal bond is required by K.S.A. 1980 Supp. 59-2401(b) in an appeal of a probate matter, the filing of such a bond is not jurisdictional, and it may be filed after the appeal is taken, on order of the appellate court."

In *In re Estate of Kempkes*, 4 Kan. App. 2d 154, 603 P.2d 642 (1979), the court affirmed a district court's determination that it had no jurisdiction to review a magistrate's order admitting a will to probate, in part due to the appellant's failure to file an appeal bond as required by 59-2401(b). The court said: "We conclude that where an appeal is taken from an order admitting a will to probate . . . the filing of the appeal bond prescribed by K.S.A. 1978 Supp. 59-2401(b) is mandatory." 4 Kan. App. 2d at 159.

In *In re Adoption of Rice*, 233 Kan. 617, 664 P.2d 838 (1983), this court said of the failure to file an appeal bond in an appeal to the district court in an adoption case:

"Under the statute the filing of such a bond is mandatory. See *In re Estate of Kempkes*, 4 Kan. App. 2d 154, 159, 603 P.2d 642 (1979). Still, it has been held mere out-of-time filing of an appeal bond does not defeat appellate jurisdiction where notice of appeal is timely filed because denial of an appeal on technical procedural grounds 'should not serve as the basis for dismissing the appeal if the interests of justice dictate otherwise.' *In re Estate of Zahradnik*, 6 Kan. App. 2d 84, 89, 626 P.2d 1211 (1981). See also *In re Estate of Duncan*, 7 Kan. App. 2d 196, 198-99, 638 P.2d 992, *rev. denied* 231 Kan. 800 (1982)." 233 Kan. at 618-619.

See *In re Estate of Kern*, 239 Kan. 8, 19-20, 716 P.2d 528 (1986).

The court in *In re Adoption of Rice* held that, under the facts, the district court did not err in dismissing the appeal because it had given the appellant additional time to file an appeal bond and she had failed to do so. 233 Kan. at 619.

*Rice* stands for the proposition that in a probate case, late filing is not jurisdictional, but that the filing of a bond is mandatory,

and the appeal will ultimately be dismissed for failure to file a bond.

We are satisfied that the ultimate question under the facts of this case is whether a quiet title action is a proper remedy. Thus, we are satisfied that a bond is not mandatory under K.S.A. 1990 Supp. 59-2401(b) and the appellants have the option whether to file a supersedeas bond pursuant to K.S.A. 1990 Supp. 60-2103(d) and obtain a stay, or to not file a bond.

The appellants' first two issues deal with whether the nephews and nieces were properly served with notice. The record before us indicates that of the named appellants in the appeal, all but Helen Bryant and Lyman John Benson were properly before the court, and, if not properly served, waived lack of service. *In re Estate of Barnes*, 212 Kan. 502, 509-10, 512 P.2d 387 (1973). Helen Bryant may have waived her lack of service. Lyman John Benson raised the issue, but the trial court did not rule on his special appearance attacking jurisdiction.

One of the problems that arises when a trial court attempts to use an unorthodox procedure is that questions that should be decided in the trial court get short-circuited.

When Macy Beason died, and his estate was opened, the nieces and nephews of Macy and his wife were not legatees or devisees under the will; nor were any of them heirs of Macy because as long as his wife was alive and they had no children, she was his sole heir. Consequently, the nephews and nieces were not entitled to notice and had no standing to challenge the probate proceedings. *In re Estate of Estes*, 239 Kan. 192, 196, 718 P.2d 298 (1986).

By allowing a quiet title action to be inserted in the middle of two probate proceedings, the trial court effectively defeated the intent and purpose of the probate code for the orderly administration of estates. The place to determine whether the wills are joint, mutual, and contractual is in the pending probate proceedings, not in a quiet title action. It is not the result that requires reversal. It is the procedure used in this case that requires reversal.

When estates are still pending and the court has not assigned interests in real estate, a quiet title action is not a proper method of eliminating persons who may be entitled to share in estate

property and who have not had an opportunity to have their day in court.

Here, the trial court has quieted title in the Norths while proceedings relating to a codicil to Caroline Hearting Beason's will are still pending. The court has, by using the wrong procedure (quiet title), denied at least one of the appellants his day in court.

We do not hold that a quiet title action cannot be brought by an estate. It can, under proper circumstances. We simply hold that title to real estate that is subject to an ongoing or pending probate proceeding should first have the claims of heirs, devisees, and legatees decided in the probate proceedings and title assigned to the proper party pursuant to the probate code. Then, if a quiet title suit is necessary, it may later be brought as part of the probate proceedings.

We have not addressed the issues raised by appellants concerning service because the trial court has discretion to order service on persons who claim some interest and who are not heirs, devisees, or legatees, and the trial court will want to insure that all of the nieces and nephews are properly before the court before hearing the issues in the probate proceeding. We do note that the nephews and nieces who are offering the codicil to Caroline Hearting Beason's will have the duty to give notice to all interested parties.

The nieces and nephews argue that the court erred in holding that its determination in Macy's estate that the wills are joint and mutual is binding on them and is res judicata. The court found

"that the issue of the joint, mutual, and contractual Will of Macy and Caroline Beason has been decided, that no appeal has been taken, and that the issue is res judicata. The parties here contesting the Will were present at the hearings, were represented by counsel, and no appeal was taken from the Orders entered."

The trial court is wrong in its facts. The nieces and nephews could not have themselves been parties to the determination since the trial court had previously dismissed them. One who is dismissed from a suit is not bound by a judgment in that suit. *Mid-Continent Casualty Company v. Everett*, 340 F.2d 65, 69 (10th Cir. 1965).

Res judicata prevents relitigation of the same claims. *Adamson v. Hill*, 202 Kan. 482, 484, 449 P.2d 536 (1969). True res judicata is not present here. It requires identity of the cause of action. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988). The issue before the trial court was whether the nieces and nephews had standing. Collateral estoppel prevents a second litigation of the same issues between parties or their privies. *Goetz v. Board of Trustees*, 203 Kan. 340, 349, 454 P.2d 481 (1969). Collateral estoppel requires: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment. *Jackson Trak Group*, 242 Kan. at 690.

The major contention in this case is that the parties were not the same or in privity. In *Goetz*, 203 Kan. at 350-51, this court discussed the concept of privity:

"There is no generally prevailing definition of 'privity' which can be automatically applied to all cases. A determination of the question as to who are privies requires careful examination into the circumstances of each case as it arises. It has been held that all persons are privies to a judgment who succeed to the estate, interest or right to the property thereby adjudicated or affected, where such succession was derived through or under one or other of the parties to the action, and accrued subsequent to the commencement of that suit."

In *Hungate v. Hetzer*, 83 Kan. 265, 266, 111 Pac. 183 (1910), this court said, "The appellant is in privity with his grantor, and as said in *Utley v. Fee*, 33 Kan. 683 [7 Pac. 555 (1885)], 'any decree rendered against the grantor affecting the grantor's title is also in effect a decree rendered against the grantee, and it equally affects his title.' " In *Wells v. Davis*, 226 Kan. 586, 589, 603 P.2d 180 (1979), this court said: "A privy is: '[O]ne who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.' "

The nieces and nephews would then be privies because they acquired their interests through Caroline, and collateral estoppel would apply if it was not for the fact that the deed and codicil

in question were executed before the judgment in Macy's estate holding that Macy's will was contractual.

In summary, the trial court has used the wrong procedure and has proceeded against at least two of the appellants without proper service. While the trial court may reach the same result, the litigants are entitled to an opportunity to be heard.

Reversed and remanded with directions to set aside the judgment in the quiet title action and to proceed with the orderly administration of the decedents' estates.