No. 45,991

In the Matter of the Estate of John Elza Zimmerman, Deceased. BERNICE E. MINICH, *Appellant,* v. DAVID R. KUNS, Executor, *Appellee.*

(485 P. 2d 215)

Opinion filed May 15, 1971.

*Forrest E. Short,* of Short & Short, of Fort Scott, argued the cause, and *Joel B. Short,* of the same firm, was with him on the brief for the appellant.

*Douglas Hudson,* of Hudson & Hudson, of Fort Scott, argued the cause, and *Douglas G. Hudson* and *David Mullies,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from a summary judgment disallowing a petition filed by Bernice E. Minich in the Estate of John Elza Zimerman, Deceased.

The case had its origins in the spring of 1960. On April 11 of that year, John Elza Zimmerman and Abbie Zimmerman (hereafter referred to respectively as John and Abbie) executed their joint will, leaving all the property belonging to either of them to the survivor for the use of the survivor during his or her lifetime, with full power and right to convey and transfer the property without court inter-

vention, and directing that at the death of the survivor all the property not disposed of by the survivor be distributed as follows: (1) A certain quarter section of land to Charles R. Minich, a nephew; (2) the residue and remainder of their property, real and personal, in equal shares to thirteen (13) specified relatives, Charles R. Minich being among those named; and (3) the lawful issue of any deceased heir to take their parents' share by representation, or if none, the share to be divided pro rata among the other surviving heirs.

Abbie died on June 7, 1960. The joint will was not offered for probate at the time of Abbie's death nor was it ever produced for probate until after John's death, more than seven years later.

On August 18, 1961, John executed a codicil to the joint will in which he left various specific items of personal property, largely antiques, to Charles and/or Bernice E. Minich and two other legatees. Except for these few bequests, John expressly ratified the will in every respect.

John died January 9, 1968, and the joint will was offered and admitted to probate as his last will and testament on January 22, 1968, the first notice to creditors being thereafter published January 25, 1968. In the meantime, that is prior to John's death, Charles R. Minich, to whom we will largely refer as Charles, departed this life at his home in Galesburg, Illinois, on April 25, 1966, being survived by his widow Bernice E. Minich, hereafter called Bernice or petitioner, as his sole and only heir.

On the twelfth day of November, 1968, some eighteen (18) days after the nine-month nonclaim statute had run, Bernice filed her petition in probate court alleging that pursuant to the terms and conditions of John's and Abbie's joint will, title to the farm land vested in Charles upon Abbie's death, subject only to John's life estate with power of conveyance, and that all rest and residue of their properties, both real and personal, descended to the thirteen named legatees, also subject to John's life estate with power to convey, and that a one-thirteenth interest in the residue became vested in Charles at Abbie's death. Bernice alleged John had not conveyed the farm and she concluded her petition by praying for an order decreeing that the bequests to Charles had not lapsed, and that upon the death of Abbie there had vested in Charles a remainder interest in fee in and to the quarter section of land and a one-thirteenth interest in the remaining property.

The case was transferred to district court where the executor filed a motion for summary judgment while the guardian *ad litem* filed an answer on behalf of certain minors. The trial court treated the latter's answer as being, in effect, a motion for summary judgment and thereupon entered summary judgment disallowing the petition filed by Bernice.

In a comprehensive memorandum the trial court held that the joint will could not be operative as Abbie's will, since it was not probated within five years of her death (see K. S. A. 59-618); that the devise of the farm and the residuary bequests to Charles had lapsed upon his death prior to the death of John; that no claim for damages against John's estate had been filed within the time allowed by the nonclaim statute, K. S. A. 59-2239; and that no remainder interests in the Zimmerman properties became vested in Charles upon Abbie's death. The court also held that, assuming the joint will was contractual, and that Bernice's petition constituted a claim under its provisions against John's estate, the same was filed too late to comply with the nonclaim statute.

Bernice has appealed. As appellant, she has set forth seven points of error in her brief. However, the real thrust of her position is that upon Abbie's death, Charles became the owner of a vested remainder interest in the quarter section of farm land, and of a one-thirteenth vested interest in the residue and remainder of Abbie's estate, subject only to John's life estate with the power to convey and transfer the property.

This position was made quite clear on oral argument when counsel for Bernice advised this court that his client was not claiming any interest under the joint will—whether it be John's or Abbie's. At the same time counsel stated her position was that John held title to Abbie's property as a constructive trustee and that this relationship dated back to the time of Abbie's death. This constructive trust theory, which was also advanced in appellant's brief, differs from that set out in her petition, *i. e.,* that title vested in Charles by virtue of the joint will, and the record is not clear that the trust theory was presented to the trial court. Be that as it may, and we think it makes little difference to the result in this case which approach is taken, we shall examine both prongs of petitioner's contention.

Petitioner's counsel devote a considerable portion of their brief filed in her behalf to the proposition that where a claimant seeks

only to exclude from a decedent's estate property which had never become a part of the estate, the nonclaim statute is not applicable, citing *Windscheffel v. Wright,* 187 Kan. 678, 360 P. 2d 178, 89 A. L. R. 2d 636 and other cases. We grant that such has been the holding by this court. However that is not the present issue in dispute. The point now before us is whether Charles became the owner of a vested interest in the Zimmerman property as of the time Abbie died. If he did, we may assume that the interest was not an asset of John's estate, and that the petition filed by Bernice was properly in the nature of an action to remove or strike that property from the inventory of John's estate.

However, we consider the contention that Charles became vested with an interest at the date of Abbie's death to be untenable. No title could vest in Charles by virtue of Abbie's will, because her will was not probated. K. S. A. 59-616 provides that no will shall be effectual to pass title unless it has been duly admitted to probate. It is true that the joint will was admitted to probate on January 22, 1968, as John's will, not as Abbie's. No probate of Abbie's will could be had in 1968, since she died in 1960, for no action may be taken by a beneficiary to probate a will more than five years after the testator's death. (K. S. A. 59-618.)

We see no merit in the argument that when Abbie died John became a constructive trustee, holding title to the property devised to Charles as a fiduciary for the benefit of Charles. A constructive trust, sometimes termed a trust *ex maleficio,* or *ex delicto,* arises in those cases where a person by fraud, actual or constructive, or by any form of unconscionable conduct, or questionable ethics has obtained or holds title to property which in equity and good conscience he ought not to possess or which justly belongs to another. (54 Am. Jur., Trusts, § 218, pp. 167, 168; see, also, 5 Hatcher's Kansas Digest [Rev. Ed.] Trusts, § 30.

An aroma of wrongdoing permeates the atmosphere surrounding a constructive trusteeship. Such an offensive odor does not emanate from the pages of this record. No improper motive can be ascribed to John Zimmerman in this case. If the will that he and Abbie executed was contractual in nature—and we are inclined to believe it was, under the decision of *In re Estate of Chronister,* 203 Kan. 366, 454 P. 2d 438, and cases cited therein—John was obligated under his covenant not to revoke the will, and equity would have enforced that agreement against his estate had he sought to

avoid it. But John scrupulously observed his obligation; the will was not revoked by him after his consort's demise. Indeed, John ratified and confirmed that joint document after Abbie's death, so far as its provisions for Charles were concerned.

By this we do not mean to infer that had John breached a fiduciary duty, as was true in *Windscheffel v. Wright,* supra, or had he been guilty of unconscionable dealing to the detriment or disadvantage of Charles, that equity would not step in to remedy the wrong.

In truth, the dilemma in which Bernice found herself was not brought about by anything John had done or had failed to do, but rather by the untimely death of Charles prior to that of John. John's will remained unrevoked throughout the balance of his life, and its provisions as to Charles remained as they had originally been written in 1960. What had changed was simply this: Charles had left this mortal sphere.

The trial court held, and we believe correctly, that the provisions made in John's will for the benefit of Charles had lapsed prior to John's death. Accordingly, no title to the farm would pass to Charles under John's will. The weight of authority in this country appears to be that a devise or legacy in favor of a person in his individual capacity—not jointly with others—will lapse upon his death prior to the testator's decease unless the testator has expressed a different intention or unless a controlling statute otherwise directs. (57 Am. Jur., Wills, § 1425, p. 956; 3 A. L. R. 1682, Wills—Lapse—Deceased Devisee; *Keasey v. Engles,* 259 Mich. 178, 242 N. W. 878.) Kansas, like many if not most of its sister states, has addressed itself to this problem through the medium of its legislature, and the enactment of what is now K. S. A. 1970 Supp. 59-615 has been the end result. However, this statute does not apply here, because Charles died without issue—his widow being his sole heir. 59-615 is called into effect only when a blood relative within the sixth degree of consanguinity dies leaving issue who survive the testator.

There is nothing in this will, signed jointly by John and Abbie, to suggest an intention on the part of either of them that, should Charles die before the death of the survivor, the devise or bequests to him should pass to his wife. An opposite intent is indicated. The paramount concern of the Zimmermans appears to have been for the material well being of their own kin. Except for some per-

sonal items bequeathed by John to Charles and/or Bernice in his codicil, relatives alone were mentioned in the will. The farm went to Charles, a nephew, and the residue to thirteen specified relatives, including Charles. Should any of them be deceased, their issue were to take their parents' share. Absent such issue, shares were to be prorated. We see nothing to imply that a wife or collateral heirs of a deceased relative should inherit his share.

The judgment of the trial court is affirmed.