No. 56,989

In the Matter of the Estate of John F. Jud, Jr., Deceased.

LINDA MARK and TERRI KERRIGAN, *Appellants*, v. JEAN N. JUD, Executrix, *Appellee.*

(710 P.2d 1241)

Opinion filed December 6, 1985.

*J. Bradley Short*, of Leawood, argued the cause and was on the brief for appellants.

*John D. Tongier*, of Bennett & Heaven, of Shawnee, argued the cause, and *Lewis A. Heaven, Jr.*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a district court order construing the provisions of a joint, mutual and contractual will.

John and Jean Jud were husband and wife. Both of the Juds had been previously married and each had two children by their

previous marriages. On August 27, 1981, they executed a joint, mutual and contractual will.

John Jud died on June 24, 1982, less than one year after the execution of the joint will. He was survived by his wife, Jean Jud, and his two daughters from the previous marriage, Linda Mark and Terri Kerrigan. Linda and Terri are the appellants in this action.

The will was admitted to probate in Johnson County and Jean Jud was appointed executrix of the estate.

In her initial inventory and appraisal of the decedent's estate, Mrs. Jud listed all property she held in joint tenancy with the deceased as non-probate assets under the heading "Jointly Owned Property." In response to written defenses filed by the decedent's daughters, Mrs. Jud later included the joint tenancy property in her "Amended Account of Probate Assets."

The decedent's daughters filed written defenses to Mrs. Jud's petition for final settlement of decedent's estate. In support of their written defenses, the daughters requested the trial court to construe provisions of the will to find: (1) the contractual provisions of the will apply to after-acquired property of the survivor; (2) the joint tenancy ownership of real and personal property was severed when John and Jean Jud signed the will; (3) Mrs. Jud should be required to file periodic accountings of her management and consumption of the residue of decedent's estate for the protection of the remaindermen; and (4) decedent's daughters should be allowed reimbursement from decedent's estate for their legal expenses and costs.

A hearing was conducted on the petition. On March 7, 1984, the district court issued an order construing the terms of the will, determining that the after-acquired property of the survivor of the Juds is not subject to the terms of the joint, mutual and contractual will and the joint tenancy ownership of property was not severed by the contractual will. Additionally, the trial court found that Mrs. Jud is not required to file accountings or post a surety bond and the appellants are not entitled to receive their legal fees from decedent's estate.

A journal entry of judgment was agreed upon by the parties and signed by the trial judge. Mrs. Jud then filed a "Petition for Order Nunc Pro Tunc" on the grounds that the Journal Entry of Final Settlement misstated the court's ruling concerning the

legal interest of the surviving spouse in the joint tenancy properties by describing her as life tenant thereof.

The trial judge then issued a nunc pro tunc order ruling that Mrs. Jud's interest in the estate was not limited to "only a life estate conditioned on death." Rather, the court held Mrs. Jud's interest to be controlled by the express language of the contract and the use of the term "life tenant" in the journal entry was not appropriate.

The decedent's daughters appeal.

The first two issues on appeal involve construction of the joint, mutual and contractual will. The will provides:

"I, John F. Jud, Jr., and I, Jean N. Jud, husband and wife, of the City of Leawood, Johnson County, and State of Kansas, do hereby make and publish this Joint, Mutual and Contractual Will, revoking all other Wills by either or both of us at any time heretofore made.

"1. We direct the Executor to pay out of the residue of our estate all estate and inheritance taxes assessed by reason of each of our deaths and our just debts, funeral expenses, and costs of estate administration.

"2. Regardless of the order of our deaths, I, John, give and bequeath my large diamond ring (the diamond was taken from my mother's engagement ring) to my daughter, Terri Kerrigan, if she survives me, otherwise to my daughter, Linda Mark.

"3. Regardless of the order of our deaths, I, John, give and bequeath the gold charm bracelet that belonged to my mother, if owned by me at the time of my death, to my daughter, Linda Mark, if she survives, otherwise to my daughter, Terri Kerrigan.

"4. Regardless of the order of our deaths, I, Jean, give and bequeath my diamond engagement ring and my diamond pendant to my daughter, Sue Stahl, if she survives me, otherwise to my son, Jeffrey Anderson.

"5. Regardless of the order of our deaths, I, Jean, give and bequeath my hand-carved Oriental coffee table to my son, Jeffrey Anderson, if he survives me, otherwise to my daughter, Sue Stahl.

"6. The items of tangible personal property listed on a list signed by both of us as such list exists at the time of the death of the first of us to die shall be distributed in accordance with the provisions of such list.

"7. We mutually give, devise and bequeath to whichever of us shall be the survivor the entire residue of our property and estate which we may respectively own at our death. The survivor of us shall have the use and enjoyment of such property during his or her lifetime; provided, however, said property (including any thereof that may have been separately owned by the survivor) may not be given away or consumed by the survivor except to the extent necessary to maintain for the survivor the standard of living to which he or she was accustomed during our lifetime. The survivor shall have the power to sell or otherwise dispose of any or all of such property for an adequate consideration but shall not consume or dispose of the proceeds except to the extent necessary to maintain his or her standard of living as aforesaid. The restrictions hereby imposed shall be

applicable to all of our property (except that bequeathed by paragraphs 2 through 6 of this Will) whether owned by either or both of us.

"8. Upon the death of the survivor of us, we mutually give, devise and bequeath the entire residue of our property and estate as follows:

"One-fourth (¼) thereof (or one-half (½) thereof if John's daughter, Linda Mark, does not survive the survivor of us and if Linda Mark has no children who survive the survivor of us) to John's daughter, Terri Kerrigan, if she survives the survivor of us, otherwise to her children in equal shares who survive the survivor of us.

"One-fourth (¼) thereof (or one-half (½) thereof if John's daughter, Terri Kerrigan, does not survive the survivor of us and if Terri Kerrigan has no children who survive the survivor of us) to John's daughter, Linda Mark, if she survives the survivor of us, otherwise to her children in equal shares who survive the survivor of us.

"One-fourth (¼) thereof (or one-half (½) thereof if Jean's son, Jeffrey Anderson, does not survive the survivor of us and if Jeffrey Anderson has no children who survive    the survivor of us) to Jean's daughter, Sue Stahl, if she survives the survivor of us, otherwise to her children in equal shares who survive the survivor of us.

"One-fourth (¼) thereof (or one-half (½) thereof if Jean's daughter, Sue Stahl, does not survive the survivor of us and if Sue Stahl has no children who survive the survivor of us) to Jean's son, Jeffrey Anderson, if he survives the survivor of us, otherwise to his children in equal shares who survive the survivor of us.

"9. If the survivor of us remarries, then immediately after such remarriage, the survivor shall sell and otherwise convert into cash all of the residue of our estate (including any property that may be owned as the separate property of the survivor, except any of the property bequeathed by paragraphs 2 through 6 hereof). The survivor shall distribute one-half (½) of such property (including the proceeds of such sale or disposition) as soon as converted into cash as follows:

"If the survivor of us is John, then said one-half (½) shall be distributed as follows:

"One-half (½) of said one/half (½) (or all of said one-half (½) if Sue Stahl is not then living and if Sue Stahl has no children then living) to Jean's son, Jeffrey Anderson, if he is then living, otherwise to his children then living in equal shares.

"One-half (½) of said one-half (½) (or all of said one-half (½) if Jeffrey Anderson is not then living and if Jeffrey Anderson has no children then living) to Jean's daughter, Sue Stahl, if she is then living, otherwise to her children then living in equal shares.

"If the survivor of us is Jean, then said one-half (½) shall be distributed as follows:

"One-half (½) of said one-half (½) (or all of said one-half if Linda Mark is not then living and if Linda Mark has no children then living) to John's daughter, Terri Kerrigan, if she is then living, otherwise to her children then living in equal shares.

"One-half (½) of said one-half (½) (or all of said one-half (½) if Terri Kerrigan is not then living and if Terri Kerrigan has no children then

living) to John's daughter, Linda Mark, if she is then living, otherwise to her children then living in equal shares.

"The provisions of paragraph 8 of this Will for the benefit of any beneficiary shall be revoked and shall no longer be in effect upon the distribution to such beneficiary of his or her share of our estate pursuant to the provisions of this paragraph 9.

"The provisions of paragraph 10 hereof appointing any beneficiary as an Executor of this Will shall be revoked and shall no longer be in effect upon the distribution to such beneficiary of his or her share of our estate pursuant to the provisions of this paragraph 9.

"The survivor of us shall have satisfied all contractual obligations imposed by the provisions hereof when one-half (½) of the residue and remainder of our estate shall have been converted into cash and distributed pursuant to the provisions of this paragraph 9 and the restrictions imposed upon the survivor by the provisions hereof shall thereupon cease and be of no further force and effect.

"10. We appoint the survivor of us Executor of this Will. If the survivor shall fail to qualify or cease to act as Executor hereof, then we appoint Jean's son, Jeffrey Anderson, and John's daughter, Linda Mark, as Executors in his or her place. If Jeffrey Anderson shall fail to qualify or cease to act as an Executor hereunder, then we appoint Jean's daughter, Sue Stahl, as successor Co-Executor in his place. If Linda Mark shall fail to qualify or cease to act as an Executor hereunder, then we appoint John's daughter, Terri Kerrigan, as successor Co-Executor in her place. We direct that no bond or other security shall be required of any Executor herein named who may qualify as such. The Executor or Executors shall have the power, without order of any court, to sell all or any part of the property, real, personal or mixed, other than that specifically bequeathed by the provisions of paragraphs 2 through 6 hereof, which comes into the hands of the Executor or Executors at such time, upon such terms, in such manner and for such prices as to the Executor or Executors shall seem advisable and to execute and deliver good and sufficient deeds and bills of sale conveying the title thereto to the purchaser.

"11. Our purpose is to dispose of our property in accordance with a common plan. The reciprocal and other gifts made herein are in fulfillment of this purpose and in consideration of each of us waiving the right, during our joint lives, to alter, amend, or revoke this Will in whole or in part, by Codicil or otherwise, without the consent of the other, or under any circumstances after the death of the first of us to die and prior to the satisfaction of the obligations imposed by the provisions of paragraph 9 hereof. After the obligations imposed by the provisions of paragraph 9 hereof have been satisfied, the survivor of us may alter, amend, or revoke this Will in whole or in part, by Codicil or otherwise. Notwithstanding the foregoing, in the event of our divorce or legal separation, then upon said court decree of divorce or separate maintenance becoming final, this Will and all of the provisions hereof (including the contractual provisions) shall be revoked and all of the provisions hereof shall be of no further force and/or effect."

Certain provisions of the will will be repeated where appropriate for explanation and emphasis.

The first issue on appeal is whether the contractual provisions

of the joint and mutual will apply to property acquired by Jean Jud after the death of John Jud.

The Jud will meets all the requirements of a joint, mutual and contractual will and expressly states in the introductory paragraph that it is contractual. In addition the parties concede the will is contractual; therefore, the contractual character of the will is not in issue in this case.

Though it is not a part of the record, we were informed at oral argument that this issue was prompted by the potential recovery of a judgment in a wrongful death action brought by Mrs. Jud in Johnson County growing out of the death of John Jud.

Appellants contend the will reveals an intent to include in its provisions all of the property owned by each testator at the time of his or her death. Under this view, any property owned by Mrs. Jud at the time of John Jud's death and acquired by her prior to her death would be so included and thus subject to the consumption, gift and sale limitations of the will.

Appellee contends the corpus of the estate to which the will applies is determined at the death of the first testator to include only the property of the deceased and the property owned by the survivor on that date. She argues any property acquired by the survivor thereafter is not subject to the contractual will. The parties refer to such property as "after-acquired" property. The question then is whether the Jud contractual will applies to property acquired by the survivor after the death of the first testator.

While we have not yet considered the specific issue before us, the law of joint, mutual, contractual wills has been extensively construed, and from it we derive relevant language. A first tenet to remember in contemplating this dispute is that a will, although jointly executed by two testators, is in legal effect the separate will of each testator and, as an individual will, pertains to each testator's property at the time of his or her death. See 79 Am. Jur. 2d, Wills § 814. The Kansas Court of Appeals confirmed this principle in *In re Estate of Duncan,* 7 Kan. App. 2d 196, 638 P.2d 992, *rev. denied* 231 Kan. 800 (1982), stating in Syl. ¶ 2:

"A joint will is, in effect, the separate will of each testator and speaks only as to the testator's property as of the time of his or her death."

We must also consider the nature and effect of the testators' contract on the disposition of their property. The contract is

effective from the date of execution while the wills are effective from the date of death of each testator. This means that once the will is executed by both parties it becomes a binding contract incapable of unilateral revocation and, after the death of one of the parties, it is irrevocable. See *Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065 (1924).

In addition to the application of these basic concepts, we are guided by specific statutory authority on this matter. K.S.A. 59-613 pertains to after-acquired property and provides:

"All property acquired by the testator after making his or her will shall pass thereby in like manner as if possessed by him or her at the time when the testator made his or her will, unless a different intention appears from the will."

Thus, a joint, mutual and contractual will speaks to the property of each testator at the time of his or her respective death and includes all after-acquired property of the survivor unless a different intention appears from the will.

We can now apply this rule to the will in question. The first six paragraphs are merely specific bequests of the testators' personal property and are not in controversy. Paragraph 7 provides the survivor shall receive the residue of decedent's property for life with a limited power of consumption, gift or sale for necessities. The concluding sentence provides:

"The restrictions hereby imposed shall be applicable to all of our property (except that bequeathed by paragraphs 2 through 6 of this Will) *whether owned by either or both of us.*" (Emphasis added.)

Paragraph 8 bequeaths and devises the "residue of our property and estate," one-fourth to each of John Jud's daughters and one-fourth to each of Jean Jud's children.

Paragraph 11 states the testators' purpose in making the will. They proclaim it a common plan and that the reciprocal and other gifts are in fulfillment of that purpose and in consideration of each waiving his or her right "to alter, amend, or revoke this Will in whole or in part, by Codicil or otherwise" after the death of the first to die except in case of remarriage.

The Juds' intent, in executing such a "common plan," was obviously to provide first for the survivor of the Juds during his or her lifetime, and after the death of the survivor, to provide equally for John's two daughters and Jean's son and daughter by their previous marriages. There is no language in the will evidencing an intention that after-acquired property should not be

included in the will. Rather, the waiver of the right to revoke is a clear statement that this will is to apply to the survivor's property at the survivor's death. In fact, the exclusion of after-acquired property from the will would result in an inequitable distribution to John's daughters which would violate the Juds' "common plan."

In *Wimp v. Collett*, 414 S.W.2d 65, 76 (Mo. 1967), a similar situation existed. There Dr. Grim and his wife contracted to will their property, after their lives, one-half to his collateral heirs and one-half to her collateral heirs. Mrs. Grim survived. After her death, her heirs sought to exclude some after-acquired entirety property from the terms of the will. In ruling against them the court stated:

"Reference to the will previously set out both in full and in part shows that the Grims did intend to include their after-acquired entirety properties in their contract and joint will. In paragraph Second they provided that '. . . all of our property . . . of which we may be possessed at the time of the decease of either of us, shall be held by the survivor' for life; the right to use the same for life 'shall not be construed . . . to mean that the survivor shall have the right to sell any of the real estate owned by either of us at the date of death.' Item Third disposes of 'all . . . of our property . . . wherever situate and existing at the . . . death of the survivor,' half to Dr. Grim's heirs and half to Mrs. Grim's heirs. Even though the evidence shows that at the execution of the will all real estate was then owned by Dr. Grim, yet the joint will covers 'our' property as it may exist at the death of either. 'Our' would have no meaning if all properties owned by both were not included. Similarly, reference to all property existing at the death of the survivor would be meaningless unless it included after-acquired property regardless of how acquired."

By the same token the Jud common plan to treat the two families equally would have no meaning if Mrs. Jud's property were not included.

We conclude the Juds' joint, mutual and contractual will contains an express provision that all property of both testators, including the after-acquired property of the survivor, is subject to the contractual terms of the will. The only relief from these contractual obligations is in the case of remarriage by the survivor where after-acquired property, to the date of remarriage, must be shared with the deceased's children. We reverse the trial court decision on this issue.

Appellants next argue the trial court erred in holding the joint, mutual and contractual will of the Juds did not sever the joint

tenancies under which ownership the Juds held much of their property.

In light of our holding on the foregoing issue and since Mrs. Jud amended the inventory and appraisal of the estate to include all of the joint tenancy property as probate property and thus submitted it to the terms of the contractual will, this issue is moot.

This court will not decide questions when its decision would not be applicable to an actual controversy and where the judgment itself would be unavailing. *State ex rel. Stephan v. Pepsi-Cola Gen'l Bottlers, Inc.*, 232 Kan. 843, 844, 659 P.2d 213 (1983). It is the duty of this court to decide actual controversies by a judgment which can be carried out and not to give opinions on moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court. *City of Roeland Park v. Cross*, 229 Kan. 269, 270, 623 P.2d 1332 (1981).

Any judgment of this court on the issue of whether or not the joint tenancy was severed by the contractual will would be of no consequence. Mrs. Jud, by placing the "joint tenancy" property in the probate estate, has agreed the property is subject to the terms and restrictions of the joint, mutual and contractual will. No actual controversy remains. This issue is without merit.

Appellants next challenge the trial court's refusal to require Mrs. Jud to post a surety bond or file periodic accountings for the protection of the other heirs.

The trial court ruled Mrs. Jud's interest cannot be termed that of a "life tenant." We find this holding to be incorrect. Mrs. Jud holds a life estate subject to her future remarriage with a limited power of consumption and disposition. Accordingly, our previous rulings relating to the duties of a life tenant to the remaindermen are applicable here.

In *In re Estate of Miller*, 225 Kan. 655, 658-59, 594 P.2d 167 (1979), we held a life tenant, with power to sell or dispose of property devised to him for life with remainder to designated persons, is a trustee or quasi trustee and occupies a fiduciary relation to the remaindermen. Thus, the life tenant owes the remaindermen the highest duty to act honorably and in good faith. We hold Jean Jud holds a trust relationship to the four beneficiaries of the residue of the estate under the joint will.

Appellants argue Mrs. Jud, as a "trustee" of the residue of the estate, should be required to file periodic accountings of her

administration of the trust or post a bond to protect the remaindermen. They justify this position with the argument that since the bulk of the Juds' estate is composed of cash and personal property, a requirement that Mrs. Jud post bond would be in line with previous decisions of this court. *Blakely v. Blakely*, 115 Kan. 644, 224 Pac. 65 (1924); *Diller v. Kilgore*, 135 Kan. 200, 9 P.2d 643 (1932). Additionally, appellants point out there is specific statutory authority allowing the court to require the filing of a bond to protect the remaindermen's interest. K.S.A. 59-1506.

We have held, however, a life tenant who has the power to dispose of or consume the corpus will not be required to give security or furnish an accounting for the protection of the remaindermen in the absence of a showing of danger of loss or waste. *In re Estate of Lehner*, 219 Kan. 100, 107, 547 P.2d 365 (1976); *In re Estate of Burling*, 179 Kan. 687, 693, 298 P.2d 290 (1956).

The court in *Lehner* reasoned that when such broad power is given to the life tenant by the will, it would be inconsistent with the intent of the testator and overly burdensome upon the life tenant to require an annual accounting. *In re Estate of Lehner*, 219 Kan. at 107. The same principle applies here.

Appellants make no claim of bad faith or waste but instead argue Mrs. Jud has no power to dispose of or consume the corpus of the estate.

While it is true Mrs. Jud does not have an *unlimited* power to dispose of or consume the corpus of the estate, she does have a limited power to consume that "necessary to maintain for the survivor the standard of living to which [she] was accustomed during our lifetime." This gives her the power to invade the corpus of the estate under the stated conditions.

Therefore, we hold our decision in *Lehner* applicable to the present case. This is particularly true since there is no claim of bad faith on the part of Mrs. Jud. In fact, as the trial court noted, Mrs. Jud provided a detailed standard of living statement and is willing to voluntarily provide an annual accounting to the appellants. Appellants have available to them all of the remedies available to remaindermen after a life estate in the case of the commission of waste. In the absence of an express provision in the will requiring a bond and an accounting, the survivor is not required to furnish a bond and an accounting absent a showing of bad faith or waste. This issue is without merit.

Appellants next allege the trial court erred in not allowing reimbursement from the decedent's estate for their legal expenses and costs.

Appellants have requested reimbursement of their attorney fees and costs pursuant to K.S.A. 59-1504, which provides in pertinent part:

"Any heir at law or beneficiary under a will who, in good faith and for good cause, successfully prosecutes or defends any other action for the benefit of the ultimate recipients of the estate may be allowed his or her necessary expenses, in the discretion of the court, including a reasonable attorney's fee."

This court's decision in *Jennings v. Murdock,* 220 Kan. 182, 215, 553 P.2d 846 (1976), outlines the general rule to be applied in regard to allowance of attorney fees:

" 'In a meritorious action brought to construe a will, attorney fees are allowable under the provisions of K.S.A. 59-1504 as costs of litigation where the services of the attorney have been beneficial to the estate or are necessary for proper consideration of the will.' " (Quoting *In re Estate of Murdock,* 213 Kan. 837, Syl. ¶ 8, 519 P.2d 108 [1974].)

Therefore, in order for appellants to be awarded attorney fees, the attorney's services must have been either beneficial to the estate or necessary for a proper consideration of the will.

Appellants argue that the services of their counsel resulted in the inclusion in the estate of assets totalling $277,972.17 which had not been previously included. Had appellants not obtained counsel and filed written defenses to the Petition for Final Settlement, they contend the estate of the decedent would have been seriously understated and the interests of the ultimate recipients of the decedent's estate would not have been protected.

The thrust of this argument centers around the label under which the joint tenancy property was originally listed. Mrs. Jud originally inventoried the joint tenancy assets as non-probate assets under the heading "Joint Tenancy Property." However, after the decedent's daughters filed their written defenses, Mrs. Jud amended her original "Inventory and Valuation" and her final accounting to include the "joint tenancy" assets.

Appellee argues that she always intended to include the joint tenancy property within the consumption restrictions imposed on her by the will and that she filed the amended account merely as a response to appellants' written defenses. Additionally, ap-

pellee argues that the attorney's services did not benefit the estate since no new assets were discovered.

The appellants, by contesting the final settlement of this estate and requesting a construction of the will, have made an important contribution to the estate. Through the appellants' actions, the value of the probate estate increased by some $278,000, Mrs. Jud agreed to provide appellants with a cost of living statement and an annual accounting, and a construction of the will was obtained entitling appellants to an interest in the after-acquired property of Jean Jud. We find appellants' actions to be in good faith and for good cause and to have rendered a material benefit to the ultimate recipients of the estate. Appellants therefore should be allowed reimbursement for their expenses including reasonable attorney fees.

The judgment of the trial court is affirmed in part and reversed in part and remanded with instructions to determine and allow reasonable attorney fees for appellants' attorney.