No. 65,483

In the Matter of the Estate of MAUDIE MARIE BURCHAM, a/k/a MARIE M. BURCHAM and MARIE TEAGUE BURCHAM, Deceased.

(811 P.2d 1208)

Opinion filed May 24, 1991.

*Joseph N. Vader*, of Olathe, and *Dana B. Vader,* of Washington, D.C., argued the cause and *Joseph N. Vader,* was on the brief for appellants.

*Lewis A. Heaven, Jr.*, of Holbrook, Ellis & Heaven, P.A., of Merriam, argued the cause, and *Steven M. Goe*, of the same firm, was with him on the brief for appellee Iris Marie Kersten.

*Eugene F. Gastl*, of Shawnee, was on the brief for appellee Elva M. Greer, administratrix, c.t.a.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This appeal concerns distribution rights under a joint, mutual, and contractual will, executed by Ray and Maudie Burcham, husband and wife. At issue is how Maudie's estate, as the survivor, should be distributed.

The facts are not disputed. Ray and Maudie Burcham were husband and wife. Maudie had one son from a prior marriage; Ray had no children. In a single-instrument will, which was executed on April 23, 1965, Ray and Maudie agreed to give their properties to the survivor of them and then, following the death of the survivor, to six named persons. Each beneficiary was to receive a one-sixth absolute interest. These six heirs included Ray's three nephews and two nieces as well as Maudie's son.

After Ray died on June 13, 1965, Maudie did not offer the will for probate because virtually all their property was held in joint tenancy with the right of survivorship. Maudie did initiate a determination of descent proceeding concerning the title to shares of stock held in Ray's name only. Maudie died on May 14, 1989, without revoking or altering the joint, mutual, and contractual will. This will was admitted to probate in the Johnson County District Court on August 2, 1989. Between Ray's death in 1965 and Maudie's death in 1989, Ray's three nephews, Hoyd, Reuben, and Hale Burcham, and Maudie's son, James Greer, who had all been named as one-sixth beneficiaries of the will, died.

A petition for probate of will and issuance of letters of administration was filed July 6, 1989. The petition for final settlement in this action prayed that Maudie's estate be distributed in one-third shares to Ray's two surviving nieces, who were named as beneficiaries in the will, and Maudie's granddaughter, Iris Marie Kersten, who was the daughter of James Greer.

Appellants are the heirs-at-law of Ray's three nephews and include Hoyd's son, Joe; Reuben's sons, Reuben, Jr. and Robert; and Hale's sons, Marion, Carl, and Dennis. These appellants objected to the petition for final settlement on grounds that the interest of their fathers vested upon Ray's death. One of Ray's surviving nieces, Rita Russell, joined appellants' argument because she believes it reflects the intention of the Burchams, even though it will decrease her share of inheritance substantially. The other niece, Maxine Wright, is incapacitated. Appellees are Mau-

die's granddaughter, Iris Marie Kersten, and the administrator of Maudie's estate, Elva Greer.

The district court held that the will was a contractual instrument. It determined that the joint will contained no language to support a life estate in the surviving spouse. It further determined that the separate will of Ray Burcham was never admitted to probate and that, because no life estate was created for Maudie, no person could claim to take under the will of Ray Burcham. Therefore, the court concluded that the six beneficiaries had no vested interest in the estate upon Ray's death.

The district court further held that, if Maudie Burcham committed a breach of contract, the remedy for the aggrieved party would be a suit for damages. Because she did not breach the contract and no vested remainder existed before her death, the interests of the named beneficiaries, who predeceased her, lapsed unless they were saved by the provisions of K.S.A. 59-615. Because Ray's three nephews predeceased Maudie and were not her relatives by lineal descent or within the sixth degree, K.S.A. 59-615 did not save their interests. The court determined that Maudie's granddaughter and Ray's two surviving nieces each inherited one-third of the estate.

The first issue raised on appeal is whether, under the Burchams' will, the interests of the named beneficiaries vested upon the death of Ray.

Appellants concede that the district court correctly ruled that the will was a contractual will. Appellants correctly point out that a joint, mutual, and contractual will cannot be unilaterally revoked and that this court has held that, when one of the parties dies and the other accepts benefits under the will, the survivor cannot thereafter revoke the will. However, appellants argue that it was not necessary for Maudie to probate Ray's will and actually benefit from the joint contractual will for their rights to vest. In so arguing, appellants rely upon the language italicized in the following quote from this court's holding in *In re Estate of Jud*, 238 Kan. 268, 273-74, 710 P.2d 1241 (1985):

"A first tenet to remember in contemplating this dispute is that a will, although jointly executed by two testators, is in legal effect the separate will of each testator and, as an individual will, pertains to each testator's property at the time of his or her death. See 79 Am. Jur. 2d, Wills § 814.

The Kansas Court of Appeals confirmed this principle in *In re Estate of Duncan*, 7 Kan. App. 2d 196, 638 P.2d 992, *rev. denied* 231 Kan. 800 (1982), stating in Syl. ¶ 2:

'A joint will is, in effect, the separate will of each testator and speaks only as to the testator's property as of the time of his or her death.' We must also consider the nature and effect of the testators' contract on the disposition of their property. The contract is effective from the date of execution while the wills are effective from the date of death of each testator. *This means that once the will is executed by both parties it becomes a binding contract incapable of unilateral revocation and, after the death of one of the parties, it is irrevocable.* See *Menke v. Duwe et al.*, 117 Kan. 207, 230 Pac. 1065 (1924)." (Emphasis added.)

According to appellants, based upon the above language, this court, in *Jud*, held that it is the death of one of the parties to the contractual will that renders it irrevocable by the survivor. Therefore, it was not necessary for Maudie to probate Ray's will and actually benefit from the contractual will for their rights to vest. We agree that the will became irrevocable after Ray's death; we disagree that the appellants' rights vested at Ray's death.

*Jud* is factually distinguishable from the present case and does not support the appellants' argument. The contractual will in *Jud* was probated upon the death of the first party to the contract and the survivor clearly benefited from the will. Therefore, it was not necessary for this court to address the question of whether the survivor must benefit from the will in order to resolve the issue.

Appellees direct this court's attention to several prior cases that specifically state that the contractual obligations vest when the survivor of a contractual will elects to take the benefits of the will. In *Long v. Buehler*, 8 Kan. App. 2d 23, 25, 648 P.2d 270, *rev. denied* 232 Kan. 876 (1982), the Court of Appeals stated:

"The effect of a joint, contractual will between husband and wife is the creation of a binding, enforceable obligation upon the survivor who takes under the will to distribute the survivor's estate in accordance with the terms of the contractual will. *In re Estate of Duncan*, 7 Kan. App. 2d 196, Syl. ¶ 3, 638 P.2d 992, *rev. denied* 231 Kan. 800 (1982)."

In *In re Estate of Adkins*, 161 Kan. 239, 167 P.2d 618 (1946), a will was executed by a husband and wife; when the husband died, the surviving wife made a second will with different bequests. The court held that the second will was entitled to probate

as the last will of the testatrix but, because all the property of each testator passed according to the terms of the first will that was to be enforced as a contract, no one would take under the second will since the property had to be distributed under the first will.

Both parties refer this court to *Lewis v. Lewis,* 104 Kan. 269, 178 Pac. 421 (1919). There, T.W. Lewis entered into a mutual and reciprocal joint will with his first wife. After her death, he remarried. After T.W.'s death, his second wife attempted to exercise her right under the statute of descents and distributions in electing to take under the law one-half of the value of all the real estate in which T.W., at any time during the marriage, had a legal or equitable interest. She argued that T.W.'s second marriage acted to revoke the prior will. The court noted that the authorities indicated confusion concerning the power of one of the parties to a mutual and reciprocal joint will to revoke it, but stated that "the rule supported by the better reasoning and by the weight of authority is that if such a will has been made and one of the parties thereto dies and the other accepts benefits thereunder, the survivor cannot thereafter revoke it." 104 Kan. at 274. The court concluded that, at the time of his second marriage, T.W. did not have the power to revoke the will so as to render it inoperable after his death. The court stated: "Even if the testamentary part of the instrument now under consideration had been revoked, the contractual part could be enforced by the plaintiffs [who were the heirs under the contractual will]." 104 Kan. at 274. In support of this statement, the court cited numerous prior decisions.

Prior decisions by this court clearly establish that, if the survivor of a contractual will elects to take from the provisions of the will and benefits from it, then the will is irrevocable and enforceable. If Maudie had probated Ray's will and taken property under it, then under prior Kansas case law, the six beneficiaries of the will would be entitled to equal shares even though they predeceased Maudie. Here, Maudie did not admit the will to probate and never took under it. Appellants argue that, if the terms of the contractual will are binding upon Maudie, their interests are vested and they are entitled to have the property

distributed as specified in the Burcham will regardless of the fact that Ray's nephews predeceased Maudie.

The case of *In re Estate of Zimmerman*, 207 Kan. 354, 485 P.2d 215 (1971), is strikingly similar to the present case and addresses the issues raised by appellants here. John and Abbie Zimmerman executed a joint will, leaving all their property to each other for use during his or her lifetime with full power and right to convey and transfer the property without court intervention. Upon the death of their survivor, they agreed that all the property not disposed of by the survivor was to be distributed as specified. Abbie died first. The joint will was never offered for probate at the time of her death nor was it ever produced until after John's death more than seven years later. Before his death, John executed a codicil to the joint will, leaving various specific items of personal property, largely antiques, to specific individuals. Otherwise, John expressly ratified the will in every respect.

After John's death, the will was offered and admitted to probate as his last will and testament. Prior to John's death, Charles R. Minich, a named beneficiary, died. The will specified that Charles, a nephew, would receive a certain quarter section of land and was one of the 13 specified relatives who would receive an equal share in the residue and remainder of the Zimmermans' property. The will also specified that the lawful issue of any of the 13 specified heirs was to take his or her parent's share by representation and, if none, the share was to be divided pro rata among the other surviving heirs. 207 Kan. at 355. Although Charles was married at the time of his death, he had no children. His only heir was his wife, Bernice, who was the petitioner seeking the quarter section of land left to Charles and his share in the remainder of the property.

Bernice alleged that, upon Abbie's death, Charles became the owner of a vested remainder interest in the quarter section of farm land and in 1/13 of the residue and remainder of Abbie's estate, subject to John's life estate with the power to convey and transfer the property. On appeal, counsel for Bernice argued that, after Abbie's death, John held title to the property in a constructive trust that related back to the time of Abbie's death. Using

the constructive trust theory, Bernice argued that title vested in Charles by virtue of the joint will. 207 Kan. at 356.

This court noted that the issue before it was whether Charles became the owner of a vested interest in the Zimmerman property at the time of Abbie's death. The court rejected this argument, pointing out that no title could vest in Charles by virtue of Abbie's will because her will was not probated. The court stated that, under K.S.A. 59-616, no will can pass title unless it has been duly admitted to probate. The will that was admitted to probate following John's death was his will, not Abbie's. 207 Kan. at 357.

The court also rejected the argument that John became a constructive trustee upon Abbie's death, holding title to the property devised to Charles as a fiduciary for the benefit of Charles. The court pointed out that a constructive trust is sometimes referred to as a trust *"ex maleficio,* or *ex delicto,"* and arises in cases where a person by fraud, actual or constructive, or by any form of unconscionable conduct or questionable ethics has obtained or holds title to property which in equity and good conscience he ought not to possess or which justly belongs to another. 207 Kan. at 357.

In applying this view of a constructive trust to the facts, the court in *Zimmerman* noted:

"An aroma of wrongdoing permeates the atmosphere surrounding a constructive trusteeship. Such an offensive odor does not emanate from the pages of this record. No improper motive can be ascribed to John Zimmerman in this case. If the will that he and Abbie executed was contractual in nature—and we are inclined to believe it was, . . . John was obligated under his covenant not to revoke the will, and equity would have enforced that agreement against his estate had he sought to avoid it. But John scrupulously observed his obligation; the will was not revoked by him after his consort's demise. Indeed, John ratified and confirmed that joint document after Abbie's death, so far as its provisions for Charles were concerned." 207 Kan. at 357-58.

When this analysis is applied to the present case, it becomes clear that the decision in *Zimmerman* controls several of the issues here. At oral argument, the parties reconfirmed that they agree that the joint and mutual will between Ray and Maudie Burcham was contractual. The decision in *Zimmerman* made it clear that the interests of a beneficiary of a contractual will do not vest at

the death of the first testator. Although the beneficiary may have the power to enforce the contractual terms of the will, the beneficiary does not have the power to enforce the will at the death of the first testator if that will is not probated. Furthermore, in the absence of any indication of fraud, chicanery, unconscionable conduct, or other form of wrongdoing, a beneficiary of a contractual will is not entitled to the property and does not have grounds for creating a constructive trust because the owner does not, in equity and good conscience, maintain title to property that the owner should not possess or property that justly belongs to another. Instead, the surviving testator of a contractual will has every right to possess the property. Therefore, based upon the decision in *Zimmerman*, it appears clear that the beneficiaries of a joint and contractual will that is not probated do not obtain an enforceable interest at the death of the first party to the contract.

We next consider whether the joint, mutual, and contractual will created a life estate in the survivor by operation of law. Appellants argue that, under Kansas law, the survivor of a joint and contractual will is classified as a life tenant, who possesses a life estate with power of disposition with the vested remainder belonging to the beneficiaries of the will. Appellants further argue that, in *Jud*, this court held that not only is the survivor of a joint and contractual will a life tenant, but also this life tenancy has a limited ability to dispose of the property because the survivor holds that property in a trust or quasi-trust relationship for the beneficiaries of the will.

However, as appellees point out, the express language in the will in *Jud* created a life tenancy. The will provided that the survivor of the joint testators

" 'shall have the use and enjoyment of such property during his or her lifetime; provided, however, said property . . . may not be given away or consumed by the survivor except to the extent necessary to maintain for the survivor the standard of living to which he or she was accustomed during our lifetime.' " 238 Kan. at 270.

Thus, appellees argue that the life tenancy was created in *Jud* by the terms of the will and not by the operation of law. Appellees argue that the issue is a question of fact to be determined under the circumstances of each case.

Appellees further argue that the district court's decision that a life estate was not created in this case is supported by ¶ 1 of the will, which transfers the property to the survivor "absolutely." Use of the term "absolutely" indicates that the will does not create a life estate, and no other language exists concerning such an interest. Because a life estate was not created, appellees argue that the deceased nephews cannot have a vested remainder in the survivor's estate; therefore, the district court was correct in finding that the claims of the heirs of the deceased nephews failed. Appellees' argument has merit.

Citing *Baldwin v. Hambleton*, 196 Kan. 353, 411 P.2d 626 (1966), appellants assert this court has held that, when a testamentary devise creates a life estate and a remainder, the remainder is vested even though the enjoyment of the interest is postponed until after the death of the life tenant. In *Baldwin*, the husband left all his property to his wife to have and dispose of during her natural life. Upon her death or remarriage, the remainder of the estate was to be divided among her children. The court concluded that the possibility that the wife would remarry did not prevent the interests of the beneficiaries from vesting. If the wife remarried, one-half of the estate was to go to her, and the other half was to go to the children. The court concluded that this did not affect the vesting, noting that a remainder may be vested subject to partial or complete divestment or defeasance. A remainder is vested subject to complete divestment when the taker is known but the life tenant exercises the power to sell the property. 196 Kan. at 358. The court also held that the remainder interest of a daughter, who predeceased the wife, would pass to the daughter's daughter. 196 Kan. at 357.

The holding in *Baldwin* does not support appellants' position. As in *Jud*, the creation of a life estate occurred as a result of a testamentary devise. The existence of a life estate was expressly recited in the will. The first decedent's will had been admitted to probate and created the life estate for the surviving spouse. Here, the will contains no limitation upon the survivor, and clearly a life estate was not created for Maudie under the terms of the joint and contractual will. Further, even if the will created a life estate, the will was never probated after Ray's death, and thus no testamentary life estate could arise.

Appellants next argue that they were third-party beneficiaries of the joint and contractual will and that their interests vested when Ray died. Appellants rely on *In re Estate of Duncan,* 7 Kan. App. 2d 196, 638 P.2d 992, *rev. denied* 231 Kan. 800 (1982). The Duncans, husband and wife, executed a joint, mutual, and contractual will in 1939. All properties were to go to the survivor of them for life with the power of disposition and then, after the death of the survivor, to their grandson, Maurice W. Duncan. Mr. Duncan died in 1946, and the will was admitted to probate. The grandson, Maurice, died in 1978, leaving a will that was admitted to probate. After her grandson's death, Mrs. Duncan revoked her 1939 will and executed a new will that left everything to her great-grandson, Maurice, Jr. Mrs. Duncan died in 1979.

The parties conceded that the 1939 will of the Duncans was joint and contractual. The Court of Appeals noted that, under the laws of Kansas, it was appropriate for the second will to be probated, although it may be ineffective to transfer property because it violates the original contract. 7 Kan. App. 2d at 199. The court noted that, when Mr. Duncan's will was admitted for probate, it was a separate will and spoke only to his property and his share in jointly owned property at the time of his death. 7 Kan. App. 2d at 199. The court concluded that, in viewing the will as a whole, the Duncans intended at the time the will was executed to give the survivor a life estate in the property with power of disposition, with the remainder to vest in Maurice, the grandson. Only the enjoyment of possession was postponed until the death of the survivor. Thus, the court held that, upon Mr. Duncan's death and admission of his will to probate, a remainder interest in his property vested in Maurice, subject to Mrs. Duncan's life estate. 7 Kan. App. 2d at 200.

The court further concluded that the untimely death of Maurice prior to Mrs. Duncan's death did not cause the devise in the 1939 will to lapse. Maurice was a third-party beneficiary to the 1939 will and had a claim against Mrs. Duncan's estate for the property not disposed of by the contractual will or under her power to dispose provided by that will. The court concluded that Maurice was vested with a recognized interest in the property by virtue of the will and could have maintained proceedings to prevent waste and protect his interests, to enforce the contract

and impress a trust on the property, or to make a claim against Mrs. Duncan's estate had she breached the will. 7 Kan. App. 2d at 201. Thus, the court held that Maurice's contractual rights under the 1939 will were not extinguished by his untimely death and that the benefits were subject to distribution by him under his will. 7 Kan. App. 2d at 202.

Appellees argue that the third-party beneficiary relationship cannot be applied here because the appellants' interests would vest only if Ray's will were probated. Contrasting *Duncan*, appellees argue that the grandson's remainder interest vested upon Mr. Duncan's death and the admission of his will to probate, which created a life estate for Mrs. Duncan.

Appellees are correct that, here, appellants do not obtain any interest in the estate of the Burchams pursuant to the operation of the testamentary provisions of the will. Because Ray's will was not probated, appellants could not obtain a vested interest in the estate pursuant to that will.

Here, as in *Zimmerman*, the will was not offered for probate at the death of the first testator. In addition, the language used in the joint and contractual will did not create a life estate in the survivor but, instead, Maudie was given the property "absolutely." Therefore, based upon *Zimmerman*, Ray's death did not create a life estate in Maudie; instead, she inherited the property in its entirety. The bequest of the property "absolutely" was consistent with the joint tenancy ownership created between the parties prior to Ray's death. Maudie was, however, required to comply with the provisions of the contractual will, which she did by making no attempt to change the will.

The final issue raised by appellants is whether the beneficiaries' interest lapsed under the anti-lapse statute, K.S.A. 59-615. The district court held that the will contained no language to support a life estate in the survivor and that Ray's separate will was not admitted to probate, which meant that no party could arguably take an interest in the estate by virtue of Ray's will. The court thus concluded that no vested remainder occurred in any of the six named beneficiaries at Ray's death. The court further found that Maudie did not breach the contract, and therefore no beneficiary had a suit for damages. The court concluded that the only viable theory for the heirs of the beneficiaries, who died

prior to Maudie, was the application of the anti-lapse statute. Pursuant to K.S.A. 59-615, Maudie's granddaughter was saved from common-law lapse, but the interests of the heirs of Ray's nephews lapsed because the heirs were not Maudie's relatives by lineal descent or within the sixth degree.

K.S.A. 59-615(a) provides:

"If a devise or bequest is made to a spouse or to any relative by lineal descent or within the sixth degree, whether by blood or adoption, and such spouse or relative dies before the testator, leaving issue who survive the testator, such issue shall take the same estate which said devisee or legatee would have taken if he or she had survived, unless a different disposition is made or required by the will."

In discussing the origin and history of anti-lapse legislation in Kansas, this court, in *In re Estate of Thompson*, 213 Kan. 704, 705-06, 518 P.2d 393 (1974), noted that at common law, in the absence of a statute or provision in the will showing the testator's intent that the gift go to some other designated person, the gifts lapsed when the beneficiary predeceased the testator. The rule was based on necessity and the ambulatory character of a will. Anti-lapse statutes, such as K.S.A. 59-615(a), evolved to temper the application of the common-law rule. The Kansas statute has been amended repeatedly to include not only blood relatives but also adopted children.

Appellants argue that the contract evidenced by the joint and mutual will was effective from the date of execution, even though the will itself became effective at the date of the death of each testator. Once the will was executed by both parties, appellants argue, it became a binding contract incapable of unilateral revocation and, after the death of one of the parties, was irrevocable. According to appellants, the binding contractual nature of the joint will and the vesting of contractual rights of the third-party beneficiaries at Ray's death suffice to comply with the language of K.S.A. 59-615(a), allowing an exception if a different disposition is made or required by the will. Appellants argue that it is inequitable and contrary to the intent of the parties and the contractual rights of the third-party beneficiaries for the court to allow Maudie's granddaughter but not the heirs of Ray's nephews to be saved by statute from common-law lapse. We do not agree.

This issue was also addressed in *In re Estate of Zimmerman*, 207 Kan. 354, 485 P.2d 215 (1971), as follows. The weight of authority in this country is that a devise or legacy in favor of a person in his individual capacity—not jointly with others—will lapse upon his death prior to the testator's death unless the testator has expressed a different intention or unless a controlling statute otherwise directs. The court noted the Kansas anti-lapse statute now contained at K.S.A. 59-615. That statute did not apply in *Zimmerman* because Charles died without issue with his widow being his sole heir. K.S.A. 59-615 is called into effect when a lineal descendant or relative within the sixth degree dies, leaving issue who survive the testator. The will signed by John and Abbie Zimmerman contained nothing to suggest their intent that the devise or bequest to Charles should pass to his wife if he died before they did. Instead, an opposite intent is indicated by the provisions of the will specifying that lawful issue of a deceased heir would take his or her parent's share by representation and, if none, the share would be divided pro rata among other surviving heirs. The court noted that this was an indication that the Zimmermans' paramount concern was the material well being of their own kin. The court saw nothing to imply that a wife or collateral heir of a deceased relative should inherit the share. 207 Kan. at 358-59.

Once again, under the analysis in *Zimmerman*, it becomes clear that the anti-lapse statute does not save the inheritance of the heirs of Ray's nephews. Although Maudie's granddaughter was protected by the anti-lapse provision of K.S.A. 59-615, Ray's nephews were not related to Maudie by lineal descent; therefore, their heirs cannot recover under 59-615. A review of the will here indicates that the property of the Burchams was left to the six listed individuals, designated "to be theirs absolutely, and to be shared by them share and share alike." This language contains no indication that the Burchams intended the property to go to the heirs of the six individuals listed. Instead, it suggests that the Burchams wanted these six individuals to inherit the property and, if they did not survive to do so, then the property should be distributed among the surviving. Only the anti-lapse statute, which is not specifically overridden by the will, saves the inheritance of Maudie's granddaughter.

Here, the will made a total, complete, and absolute bequest of all of Ray's property, both real and personal, to Maudie, and the beneficiaries obtained no interests therein upon Ray's death. When the beneficiaries named in the will predeceased Maudie, their individual bequests and devises lapsed unless saved by K.S.A. 59-615(a). Because Ray's nephews were related to Maudie only by marriage, the provisions of the anti-lapse statute did not save the bequests.

In summary, we conclude that the interest of the six beneficiaries under the Burchams' joint, mutual, and contractual will did not vest upon Ray's death. Therefore, the beneficiaries of the will who died prior to Maudie's death acquired no vested interest in the estate. The appellee, Iris Marie Kersten, is entitled to recover under Maudie's will because the provisions of K.S.A. 59-615 save the interest from lapsing since she was a lineal descendant of Maudie. The district court correctly determined that Maudie's granddaughter and Ray's two surviving nieces, who are named in the will, each inherit one-third of the estate.

The judgment of the district court is affirmed.