(865 P.2d 1037)
No. 69,030

In the Matter of the Estate of EVERT ANDERSON, deceased.
Petition for review denied 254 Kan. 1007 (1994).

Opinion filed December 23, 1993.

*Robert R. Laing, Jr.*, and *Andrew D. Lyons*, of Overland Park, for the appellant.

*Gordon E. Wells, Jr., William K. Waugh III*, and *Laura J. Bond*, of Lathrop & Norquist, of Overland Park, for the appellee.

Before BRISCOE, C.J., BRAZIL and LEWIS, JJ.

LEWIS, J.: The executor of the last will and testament of Evert Anderson, deceased, appeals from the computation and award of damages to the appellee, Rick A. Gaines. After review, we affirm in part, reverse in part, and remand.

Evert and Almeda Anderson were husband and wife. The marriage was the second for Almeda, who was the grandmother of Gaines and Jan Ann Taylor.

In 1976, Evert and Almeda jointly executed a document which they described as "our Joint and Mutual and Contractual Last Will and Testament." The document is a single instrument will, signed by both Evert and Almeda and witnessed as their joint and mutual last will and testament. The will states that it is a joint will and that it is to govern the distribution of the estates of both Evert and Almeda regardless of who dies first. The 1976 will disposes of their property as follows:

(a) To Rick A. Gaines, the parties' "home place" in Johnson County, Kansas.
(b) To Jan Ann Taylor, the sum of $20,000.
(c) To William A. Johnson, brother of Almeda, the sum of $10,000.
(d) To Marie O. Slusser, sister of Almeda, the sum of $10,000.
(e) To Betty Hayes, niece of Almeda, the sum of $10,000.
(f) To Oral Roberts of Tulsa, Oklahoma, the sum of $20,000.
(g) To Billie Maxine Gaines, the daughter of Almeda, the sum of $30,000 in trust.
(h) To Rick A. Gaines, all the rest and residue of the estate.

Almeda died in April 1977. Evert offered her will for probate, and it was admitted to probate in Johnson County, case No. P-16270. Evert benefited from the probate of the 1976 will and was assigned all of Almeda's estate under that document.

Evert died in December 1991. Prior to his death, he executed a new will, greatly at variance with the joint and mutual will he executed with Almeda. The 1991 will was admitted to probate in Evert's estate and disposed of the estate as follows:

(a) To Rick A. Gaines, the residence and surrounding real estate of the testator. In addition, the testator released Rick from any debt owed to Evert.
(b) To Jan Ann Taylor, the sum of $10,000 and area rugs from the testator's residence.
(c) To Virginia Pruitt, the sum of $10,000 and the testator's current automobile.
(d) To Feli Gaines, the sum of $15,000.
(e) To the Salvation Army, the sum of $20,000.
(f) To the Grace Christian Fellowship Church of Wyandotte County, Inc., the sum of $20,000.
(g) To Rick A. Gaines and Jan Ann Taylor, share and share alike, all the rest and residue.

After the 1991 will was admitted to probate, Gaines filed a verified claim against the estate. The claim alleged that the 1976 will was contractual in nature and that this contract was breached by the admission to probate of the 1991 will. Gaines sought to enforce the 1976 will by recovering damages from Evert's estate calculated by what he would have received under the 1976 will,

less what he is to receive under the 1991 will. Gaines' sister, Taylor, also sought to recover damages but ultimately settled her claim for $20,000. The claim of Taylor is not an issue on this appeal, and she claims no further interest in the estate.

There was no witness testimony admitted on the hearing of the claim for damages. It does not appear from an examination of the record that the 1976 will was ever formally offered or admitted into evidence at that hearing.

It was Gaines' position that William A. Johnson, Marie O. Slusser, Betty Hayes, and Billie Maxine Gaines, beneficiaries under the 1976 will, had all predeceased Evert. Gaines argued that, because these beneficiaries were not related by blood to Evert, the bequests on their behalf in the 1976 will had lapsed. The executor refused to stipulate that these parties were deceased and took the position that there was no evidence to prove the fact of death. The trial court then granted Gaines 15 days to present evidence of death. Within that time frame, Gaines presented certified copies of the death certificates of the persons above named. The executor did not respond to this evidence and submitted no evidence to contradict the certified death certificates.

After hearing the evidence available and listening to the arguments of counsel, the trial court awarded damages to Gaines on the basis of a proposed award, which had been prepared by Gaines and presented to the court. The damage award to Gaines was as follows: Entire residuary estate to Rick A. Gaines, less: (1) $20,000 to Jan Ann Taylor; (2) $20,000 to Oral Roberts; and (3) the value of the residence (Gaines takes under both wills). The court then distributed the $20,000, which would have gone to Oral Roberts had he perfected a claim, as follows:

| | | | | |
|---|---|---|---|---|
| Virginia Pruitt | $20,000/$65,000 | × | $10,000 | = $3,077 |
| Feli Gaines | $20,000/$65,000 | × | $15,000 | = $4,615 |
| Salvation Army | $20,000/$65,000 | × | $20,000 | = $6,154 |
| Grace Christian Church | $20,000/$65,000 | × | $20,000 | = $6,154 |

The executor appeals from the award and computation of damages, alleging several errors.

## SUFFICIENCY OF THE EVIDENCE

The executor argues that Gaines presented no evidence to the trial court to support the award of damages in his favor.

There was no testimony of witnesses taken or admitted at the hearing. The transcript of the hearing consists of the statements and arguments of counsel and comments by the court. Statements and arguments of counsel are not considered to be evidence. *Kenyon v. Kansas Power & Light Co.*, 17 Kan. App. 2d 205, Syl. ¶ 3, 836 P.2d 1193 (1992).

However, the only evidence required to decide the validity of the claim for damages was the 1976 will and the 1991 will.

The issue of whether the 1976 will was contractual in nature can be determined from the four corners of that document. The document is not ambiguous and, "[a]s a general rule, the interpretation of a written contract that is free from ambiguity is a judicial function and does not require oral testimony to determine the contract's meaning. *Hall v. Mullen*, 234 Kan. 1031, 1037, 678 P.2d 169 (1984)." *Albers v. Nelson*, 248 Kan. 575, 578, 809 P.2d 1194 (1991).

A comparison of the 1976 will and the 1991 will would prove whether the 1976 contractual will was breached by the 1991 will. The 1976 will and the 1991 will were both properly before the court.

The executor insists that the 1976 will was never formally offered or admitted into evidence. We agree that the record does not reveal that this took place. However, in our opinion, this is of no assistance to the executor.

The 1976 will was attached to several of the pleadings on file in this action. It was attached to Gaines' written, verified claim for damages and was incorporated into that document by reference. In the executor's written defense to Gaines' claim for damages, he admits the authenticity, execution, and terms of the 1976 will. If these facts were admitted, there was no formal need for that document itself to be admitted into evidence.

An attested copy of the 1976 will is attached as an exhibit to several of the pleadings. An attested copy of a record of a Kansas court is competent evidence. See *State v. Baker*, 237 Kan. 54, Syl. ¶ 1, 697 P.2d 1267 (1985).

On September 10, 1992, in an order granting a motion in limine, the court, in making reference to the 1976 will, held: "Upon review of that testamentary instrument it is clearly established that Mr. and Mrs. Anderson were contractually bound by

the terms and conditions of the Last Will and Testament. There exists no ambiguity or uncertainty regarding the March 9th, 1976 instrument."

This order is not appealed from and is binding upon the parties. Finally, the trial court may very well have taken judicial notice of the 1976 will. K.S.A. 60-409(b) provides that judicial notice may be taken without request by a party "of . . . (3) such facts as are so generally known or of such common notoriety within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute." If the document was an item of which the court could have taken judicial notice, we see no need for it to have been formally offered and admitted into evidence.

The 1976 will was a matter of record in Johnson County. It was the entire focus of this lawsuit, and copies of it abound in the file. The existence and contents of the 1976 will could not reasonably and in good faith have been the subject of dispute. Indeed, other than claiming it was not admitted into evidence, the executor does not dispute its terms or its existence.

We hold that, for the reasons stated, the 1976 will was validly before the court and a matter of evidence in the instant matter. To hold otherwise would literally ignore the forest for the trees and would be hypertechnical to a fault. We find no merit in the executor's argument that no evidence of the 1976 will was admitted in this action.

The executor also refuses to acknowledge that William A. Johnson, Marie O. Slusser, Betty Hayes, and Billie Maxine Gaines are no longer among the living. He refuses to do so despite the fact that there are four certified death certificates, all showing in some detail when, where, and under what circumstances each individual exited this world. He argues that the trial court erred in allowing Gaines to present evidence after the hearing was closed.

We find no merit in the executor's argument that the trial court erred in permitting Gaines to present evidence of death after the executor refused to stipulate to those facts. We believe it to be well within the discretion of the trial court to open the record for additional evidence when justice requires and no one is prejudiced. The executor had ample opportunity to present contrary evidence after Gaines submitted the death certificates. If the

executor had contrary evidence to present, he failed to do so. We hold that the individuals in question are deceased, and we find no error by the trial court in reaching this conclusion.

## DAMAGE CALCULATIONS

The executor next argues that the trial court erred in calculating Gaines' damages. He argues that this error occurred when the trial court failed to deduct from the award to Gaines the amount of the bequests in the 1976 will to William A. Johnson, Marie O. Slusser, Betty Hayes, and Billie Maxine Gaines. The executor's theory is that the bequests in the 1976 will vested when Almeda's will was admitted to probate; as a result, the heirs at law of those predeceased beneficiaries may now claim the bequests to their parents. We agree with this position on all of the legatees with the exception of Billie Maxine Gaines.

The four 1976 beneficiaries described above are deceased. They all survived Almeda, but all predeceased Evert. William A. Johnson died on July 17, 1979; Betty Hayes, on March 9, 1988; Marie O. Slusser, on January 3, 1982; and Billie Maxine Gaines, on September 12, 1982.

The trial court's opinion does not mention the issue of lapse or the vesting of the bequests to the 1976 beneficiaries. However, the trial court's calculation of damages in favor of Gaines did not deduct from the award the bequests to the beneficiaries named above. We will assume, therefore, that the trial court concluded these bequests had lapsed.

The question we must determine is whether the bequests to the 1976 beneficiaries lapsed or were otherwise extinguished when those beneficiaries failed to survive Evert. The four individuals involved were related by blood to Almeda but not to Evert. If their deaths prior to Evert's caused their bequests to lapse, then the calculation of the trial court is correct. If those bequests did not lapse but were vested, then the trial court's calculation is wrong. In the event they were vested, they became the property of the heirs, devisees, or legatees of the beneficiaries in question, who would have the same contractual claim as was asserted by Gaines and Taylor. In that circumstance, the award to Gaines must be reduced by the amount of the vested legacies. If the bequest vested but the successors to these vested legacies

lost their rights by failure to file a claim or some other procedural pitfall, then the shares of the legatees under the 1991 will must be adjusted on an upwards basis. These are issues to be determined by the trial court on remand.

The question of whether the bequests to the 1976 beneficiaries were vested is controlled by the decision of *In re Estate of Burcham*, 248 Kan. 897, 904, 811 P.2d 1208 (1991). The decision in *Burcham* mandates the court to hold that the interest of those beneficiaries vested upon the admission to probate of Almeda's will.

The *Burcham* case dealt with the proper disposition of the estate of Maudie Burcham, deceased. Maudie and Ray Burcham had executed a joint, mutual, and contractual will, which was in effect on Ray's death. This was a single instrument will, as is the one in the instant matter, and gave the entire estate to the survivor of Ray and Maudie. Following the death of the survivor, the joint and mutual will left the estate to six named persons. *Ray died first, and Maudie did not offer Ray's will for probate.* Upon Maudie's later death, the joint and mutual will had not been revoked and was offered for probate.

Between the date of Ray's death and Maudie's death, Ray's three nephews, each of whom had been named as a one-sixth beneficiary in the joint and mutual will, died. The heirs at law of these three nephews claimed the right to take the interest of their fathers in Maudie's estate. They argued that upon Ray's death, the interest of their fathers under the will had become vested and that they had inherited that vested interest.

The Supreme Court affirmed the decision of the trial court that the interest of Ray's three predeceased nephews did not vest at Ray's death and had lapsed *because Maudie did not offer the will for probate upon Ray's death.* "Therefore, based upon the decision in [*In re Estate of Zimmerman*, 207 Kan. 354, 485 P.2d 215 (1971),] it appears clear that the beneficiaries of a joint and contractual will *that is not probated* do not obtain an enforceable interest at the death of the first party to the contract." (Emphasis added.) *Burcham*, 248 Kan. at 904.

The decision in *Burcham* was based on the fact that Maudie had not probated Ray's will after his death. Having held that the interest of a beneficiary in a non-probated joint and mutual will

does not vest at the death of the first testator, the Supreme Court in *Burcham* went on to decide the corrollary question, and held at Syl. ¶ 2: "The interests of the beneficiaries named in a joint, mutual, and contractual will *vest upon the will's being admitted to probate and not upon the death of the first testator.*" (Emphasis added.)

We are unable to distinguish this case from *Burcham*. In this case, the 1976 will was admitted to probate in 1977, after Almeda's death. Evert benefited from the 1976 will and took the entire estate as a result of probating that document. Under the law announced in the *Burcham* decision, the interest of the beneficiaries under the 1976 will vested when the will was admitted to probate. These vested interests survived each legatee and were inherited by their heirs at law after the death of each legatee.

Gaines argues that *Burcham* is not controlling. He points out that, in *Burcham*, the joint will was never offered for probate and that the language cited in Syl. ¶ 2 was merely dicta. We do not agree.

We base our decision on a point of law stated in the Supreme Court's syllabus in *Burcham*. In the recent decision of *State v. Sims*, 254 Kan. 1, Syl. ¶ 1, 862 P.2d 359 (1993), Justice Lockett said:

> "Pursuant to K.S.A. 20-203 and K.S.A. 60-2106(b), a syllabus of the points of law decided by the Supreme Court in any case shall be stated in writing by the judge delivering the opinion of the court, which shall be confined to points of law arising from the facts in the case."

We operate under the assumption that our Supreme Court means what it says when it sets out a point of law in a syllabus. We assume that our Supreme Court does not set out mere dicta in its syllabi. The decision in *Burcham* is clear and to the point. When Evert saw fit to probate the 1976 will, he vested, as a matter of law, the interests of all beneficiaries under that will.

*Burcham* dealt with whether the interest of a beneficiary of a non-probated will vested upon the death of the first testator. The decision holds that it does not. The other side of that decision is the proposition that an interest will vest if the joint and mutual will is probated. The Supreme Court saw fit to announce that point of law as well, which arises from the facts of *Burcham* and controls our decision in the instant matter.

We hold that the interest of a beneficiary in a joint, mutual, and contractual will becomes vested when that will is admitted to probate. Accordingly, we conclude that the interests of William A. Johnson, Marie O. Slusser, and Betty Hayes all were vested upon the probate of Almeda's will. This conclusion requires that we reverse the trial court's calculation of damages.

The bequest to Billie Maxine Gaines was qualified. She was given the right to receive income upon the death of the last testator. Since Billie predeceased Evert, her right to receive income never came into existence. She had nothing to pass to her heirs at law.

Billie was the beneficiary of a testamentary trust. She was to receive the net income from the trust upon the death of the surviving testator. When Evert died, there was no trust beneficiary in existence and no need to fund the trust. It was not possible for Billie to pass along the right to receive income from a trust which never came into existence.

We also believe that the question of whether Billie's bequest could be passed to her heirs at law is moot. The will provides that the trust is to terminate, and the undistributed net income and principal is to be paid, to Gaines and Taylor upon the death of Billie. If we were to assume that the trust was funded and came into existence prior to Billie's death, the principal and undistributed net income of that trust would be distributed pursuant to the terms of the will. The 1976 will provided that, upon termination, the trust should terminate and the trust assets should be paid to Gaines and Taylor. Since Taylor has settled her claim for the sum of $20,000, any interest in Billie's trust would become part of the residuary estate and would pass to Gaines in any event.

The parties argue at some length the question of whether the interests of the predeceased 1976 beneficiaries are protected by the Kansas anti-lapse statute (K.S.A. 59-615). We see no need for an extended discussion of this issue. The interests of the 1976 beneficiaries would have lapsed had they not vested upon the probate of Almeda's will in 1977. The interests of these beneficiaries were not protected by K.S.A. 59-615 since the beneficiaries in question were not related to Evert. However, since the interests of those beneficiaries vested as the result of the probate

of Almeda's will, the question of lapse is irrelevant, as is the application of the anti-lapse statute.

## BEQUEST TO VIRGINIA PRUITT

In the 1991 will, there is a bequest of $10,000 and an automobile to Virginia Pruitt. Under the trial court's calculations, the only money available to pay the 1991 beneficiaries was the $20,000 bequest made to Oral Roberts in the 1976 will. Since this was an amount Gaines would not have received under the 1976 will, it is subtracted from the total damages awarded to him. Oral Roberts has made no claim against Evert's estate, as Gaines did, and, as a result, the $20,000 bequest to Oral Roberts is available to fund the 1991 bequests.

In calculating the amount to be received by Virginia, the trial court divided the Oral Roberts bequest of $20,000 by the total 1991 bequests of $65,000 and multiplied that result by the $10,000 left to Virginia by the 1991 will. The trial court's calculation resulted in a total to be received by Virginia of $3,077.

The trial court did not consider the value of the automobile left to Virginia in calculating the shares to be received by the 1991 beneficiaries. This was error. It is true that the car itself will go to Gaines as part of the residuary estate that Gaines would have received under the 1976 will. However, in determining Virginia's proper percentage of the 1991 estate, the total value of her bequest must be taken into consideration. Assuming that the car is worth $6,000, this must first be added to the total 1991 bequests to increase that total from $65,000 to $71,000. Virginia's total bequest is increased to $16,000. Under this assumption, the calculation would be as follows:

$$\$20,000/\$71,000 \times \$16,000 = \$4,507.$$

The shares of the other 1991 beneficiaries must be recalculated using the total bequest figure of $71,000 and reduced accordingly.

Our calculation is made under the assumption that the automobile left to Virginia had a total value of $6,000. If that actual value is more or less than $6,000, then the calculations must be adjusted accordingly.

## DEBT OWED BY GAINES TO DECEDENT

Sometime before Evert's death, he apparently loaned Gaines $40,000. Gaines paid off a portion of that debt, and the remaining

principal balance upon Evert's death was $15,000. The executor argues that Gaines' damage award should be offset by $15,000 to account for this debt. We disagree.

It would appear that the simple answer to this issue is that Evert forgave the debt in the 1991 will. The debt did not survive Evert. In addition, the record shows other indications that the debt was forgiven.

However, assuming the debt was not forgiven, we conclude it remains basically irrelevant. If the debt exists, it becomes part of the residue of the 1991 estate. The entire residuary estate goes to Gaines, including the debt. The net result is that the debt cancels itself out and is not a factor.

We realize that if the estate were not large enough to pay the proportional amounts due on the 1991 bequests the debt might become a factor. The estate, however, is more than large enough to pay the proportional 1991 bequests and leave a generous amount to Gaines. Under all of the circumstances shown, the trial court did not err in not considering the alleged debt in computing the damage award to Gaines.

In summary, we reverse the trial court's calculation of the damages to be awarded to Gaines and its calculation of the amounts to be received by the 1991 beneficiaries. We reverse the trial court's decision that the bequests made in the 1976 will to William A. Johnson, Marie O. Slusser, and Betty Hayes had lapsed. We affirm the trial court in all other respects.

We remand to the trial court with the following instructions:

(a) Recalculate the damages to be awarded to Gaines. Gaines is still to receive the entire residuary estate, but there must be subtracted from that amount the $20,000 awarded to Taylor and the 1976 bequests to Oral Roberts, William A. Johnson, Marie O. Slusser, and Betty Hayes.

(b) Ultimately, some method must be devised to notify and deal with the heirs at law and/or legatees and devisees of William A. Johnson, Marie O. Slusser, and Betty Hayes. These individuals, whoever they are, stand in the shoes of the predeceased 1976 beneficiaries and have a damage action to pursue against Evert's estate. We will leave the manner in which this is to be accomplished to the discretion of the trial court.

(c) If no further claims are made under the 1976 will, the amounts to be received by the 1991 beneficiaries must be re-calculated by adding to the formula the value of Evert's automobile and the value of any 1976 bequests lost because of failure of the proper parties to file a claim. We approve the trial court's mathematical method of calculating the amounts to be received by the 1991 beneficiaries and only require that the numbers be changed to reflect the changes required by this opinion.

Affirmed in part, reversed in part, and remanded.